E. ALLEN BERNARDI, Director of Labor, Plaintiff-Appellant, v. THE VILLAGE OF NORTH PEKIN, Defendant-Appellee.

Third District   No. 3—85—0035

Opinion filed August 8, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Richard J. Puchalski, Special Assistant Attorney General, of Chicago, of counsel), for appellant.

Carl F. Reardon, of Carl F. Reardon & Associates, of East Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This action was brought by the plaintiff, Illinois Department of Labor, in the name of its director, against the defendant village of North Pekin for back pay to four women police dispatchers. The Department contended, and correctly so, that during the period of December 1980 through December 1982 the dispatchers were never paid the minimum wage provided by the Illinois Minimum Wage Law (Ill. Rev. Stat. 1981, ch. 48, par. 1001 *et seq.*). During the period in question the statutory minimum wage was $2.30 per hour. The dispatchers were paid at the rate of 60 cents per hour, 66 cents per hour, or $1 per hour. It is the Department's contention that the four dispatchers were entitled to accumulated back pay in the total amount of $26,797.61. Both the Department and the village filed motions for summary judgment. Based upon supporting affidavits and discovery depositions, the circuit court of Tazewell County ruled in favor of the village and this appeal ensued.

The four dispatchers worked out of their homes, which were wired so that the telephone in each home would ring when a call was made to the police department. The phone system was also wired with an external device so that each ringing of the phone could be heard if a dispatcher was on the home premises but outside the living quarters. The duties of the dispatcher were to answer incoming calls to the police department, make outgoing calls to the department, man the police radio, maintain a record of complaints and the radio log, make license and warrant checks, handle calls for the water and street departments, handle calls for the fire department, dispatch ambulance and rescue units, and receive calls from village residents.

The village of North Pekin has a population of approximately 1,800 people, and each dispatcher on an average work shift would receive 30 calls a day.

If a dispatcher desired to leave home during her shift, she would arrange for another dispatcher to "cover for her" by assuming the duty of handling telephone calls. The dispatchers on occasion would leave their homes for various reasons, *i.e.*, to go bowling, to play bingo, to attend school activities and to attend to urgent family matters. The dispatchers were not glued to the phone, but during the course of a shift they were able to clean house, watch television, read, entertain friends, and were allowed to and in fact did sleep. The arrangement entered into between the village and the dispatchers was flexible to the extent that the paramount duty of the dispatcher was to take care of the telephone duties, but in lull peri-

ods between calls, which could be a matter of four or five hours, the dispatcher could follow a normal routine life style.

The basic issue presented in this appeal is whether or not the four employees' job duties and functions as dispatchers were such as to entitle them to be paid the hourly minimum wage pursuant to the Illinois Minimum Wage Law.

In addressing this issue, we note that the Department and the village recognize that there is not an abundance of precedential Illinois case law which can be relied upon for guidance. Illinois courts have held that in the absence of Illinois decisions dealing with a particular labor law issue, Federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant. *Schoneberg v. Grundy County Special Education Cooperative* (1979), 67 Ill. App. 3d 899, 385 N.E.2d 351; *Board of Governors v. Rothbardt* (1981), 98 Ill. App. 3d 423, 424 N.E.2d 742.

This court is not aware of any case which is dispositive of the issue presented in this appeal; however, both parties recognize that the United States Supreme Court has delineated in a most simplistic form the determinative question, to-wit, "whether the dispatchers were waiting to be engaged or whether they were engaged to wait." See *Skidmore v. Swift & Co.* (1944), 323 U.S. 134, 89 L. Ed. 124, 65 S. Ct. 161, which presented the question of whether waiting time spent by employees in a standby capacity in the employer's auxiliary fire fighting service, which is taken up in sleeping or in amusements in the employer's fire hall, is compensable by overtime salary payments under the provisions of the Fair Labor Act (29 U.S.C. sec. 207 (1940)). The United States Supreme Court, in reversing a Federal district court for the Northern District of Texas and remanding for further proceedings consistent with its opinion made, *inter alia*, the following observation:

> "Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court. [Citation.] This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. *Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged.* His compensation may cover both waiting and task, or only performance of the task itself. Living quarters may in some situations be furnished as a facility of the task and in

another as a part of its compensation. The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was." (Emphasis added.) *Skidmore v. Swift & Co.* (1944), 323 U.S. 134, 136-37, 89 L. Ed. 124, 127-28, 65 S. Ct. 161, 163.

The court in *Skidmore*, in recognizing that inactive duty questions require a flexible solution, made the additional observation:

"In some occupations, it says [referring to an administrative bulletin] periods of inactivity are not properly counted as working time even though the employee is subject to call. Examples are an operator of a small telephone exchange where the switchboard is in her home and she ordinarily gets several hours of uninterrupted sleep each night; ***. *** In general, the answer depends 'upon the degree to which the employee is free to engage in personal activities during periods of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call without being required to perform active work.'" 323 U.S. 134, 138, 89 L. Ed. 124, 128, 65 S. Ct. 161, 163-64.

Following the guidelines set forth in *Skidmore*, this court concludes that the dispatchers were waiting to be engaged and therefore not entitled to payment of the Illinois minimum wage. We reach this conclusion because the record discloses that the dispatchers had a high degree of freedom to engage in personal activities during periods of idleness. They stated in discovery depositions that while on duty they performed household tasks, watched television, read books, took care of their husbands and children, entertained friends and were able to take naps and sleep. By virtue of an agreement between the dispatchers it was possible for one on duty to attend social activities and school functions, because the agreement provided that they would cover for each other when the one on duty would be away from her station, namely, her home. The dispatchers had a very high degree of freedom to engage in personal activities, and, as stated in *Skidmore*, this is a determining factor.

Our conclusion that the dispatchers were waiting to be engaged is bolstered by title 29 of the Code of Regulations of the United States Department of Labor. Section 785.23 provides:

"An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other peri-

ods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home. (*Skelly Oil Co. v. Jackson*, 194 Okla. 183, 148 P.2d 182 (Okla. Sup. Ct. 1944); *Thompson v. Loring Oil Co.*, 50 F. Supp. 213 (W.D. La. 1943).)" 29 C.F.R. sec. 785.23 (1985).

The Department, both in its brief and during oral argument, stressed the applicability of a United States Circuit Court of Appeals case to the instant case. The case so relied upon is *Central Missouri Telephone Co. v. Conwell* (8th Cir. 1948), 170 F.2d 641. In this case it was held that telephone operators who were on call but could sleep on duty were entitled to compensation, including the time they were sleeping. The factual situation in the *Central Missouri Telephone Co.* case, however, presents one important and distinguishing factor in that the telephone operators performed their duties on the employer's premises rather than in their own home.

For the reasons set forth, we find the agreement between the village and the dispatchers to be reasonable, and the latter are not entitled to the payment of the minimum wage as provided by the Illinois Minimum Wage Law (Ill. Rev. Stat. 1971, ch. 48, par. 1002 *et seq.*).

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

STOUDER and WOMBACHER, JJ., concur.