TOYS "R" US, INC., Plaintiff-Appellant, v. CHARLES R. ADELMAN, as Will County Executive, *et al.*, Defendants-Appellees.

Third District   No. 3—90—0532

Opinion filed June 28, 1991.

Jerome A. Siegan, Gary L. Starkman, and Allen H. Dropkin, all of Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellees.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by the plaintiff Toys "R" Us, Inc., from an order of the circuit court of Will County dismissing plaintiff's complaint against defendants Will County (County) and Charles R. Adelman, County executive. In this action, plaintiff sought a declaratory judgment, *mandamus*, and other relief. The action challenged the validity of a County resolution passed on May 10, 1990, which repealed an earlier resolution (County resolution 89—332 passed on December 11, 1989) which had declared a real estate tax abatement for plaintiff. The trial court's reason for granting defendants' section 2—619(a)(9) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)) motion was that section 162 of the Revenue Act of 1939 (Revenue Act) (Ill. Rev. Stat. 1989, ch. 120, par. 643) did not authorize the County to extend real

estate tax abatements under the circumstances of this case and, therefore, resolution 89—332 was a nullity.

■■ Whenever the granting of a motion to dismiss is reviewed, all well-pleaded facts alleged in the complaint are taken as true, and the test for determining the propriety of granting the motion to dismiss is whether it appears no set of facts may be proved so as to entitle plaintiff to recover from defendant. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372; *Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 395 N.E.2d 549.) Any allegations which are merely conclusions, unsupported by allegations of specific facts, are not, however, admitted. *Howell v. Blecharczyck* (1983), 119 Ill. App. 3d 987, 457 N.E.2d 494.

■■ Section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) allows for the filing of a motion for involuntary dismissal based on defects or defenses enumerated in the statute. For example, under section 2—619(a)(4) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(4)) defendant may seek dismissal if the claim is barred by a prior judgment, under theories of *res judicata* or collateral estoppel. If the ground for dismissal is not evident from the face of the pleading, the motion may be supported by affidavit.

The failure to allege special damages and the failure to state a cause of action are not such affirmative matter precluding relief under section 2—619. (*Rowan v. Novotny* (1987), 157 Ill. App. 3d 691, 510 N.E.2d 1111.) In *Rowan* (157 Ill. App. 3d at 693-94, 510 N.E.2d at 1112-13), the majority distinguished section 2—615 and section 2—619 (see Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619) motions:

> "The purpose of section 2—619 is primarily that of affording a means of obtaining at the outset of a case a summary disposition of issues of law or of easily proved issues of fact. The basis of the motion must go to an entire claim or demand. (Ill. Ann. Stat., ch. 110, par. 2—615, Historical and Practice Notes (by Albert E. Jenner, Jr., Philip W. Tone and Arthur M. Martin) (Smith-Hurd 1985).) Although defects that appear on the face of the pleading attacked may, according to the letter of the section, be reached by a section 2—619 motion, the section is not designed for that purpose. (*Leitch v. Hine* (1946), 393 Ill. 211, 66 N.E.2d 90.) In other words, if the only ground of a motion is a defect that appears on the face of the pleading attacked the appropriate method of reaching that defect is by a motion under section 2—615."

See also *Michel v. Gard* (1989), 181 Ill. App. 3d 630, 536 N.E.2d 1375.

In the case at bar, the motion to dismiss was made pursuant to section 2—619(a)(9) of the Code. Under that subsection, the motion asserts the claim is barred by some affirmative matter which avoids the legal effect or defeats the claim other than one of the grounds described in the previous eight subsections. (Defendants also filed a motion to dismiss pursuant to section 2—615 of the Code, but the trial court, having granted the section 2—619 motion, found it unnecessary to address the section 2—615 motion.)

Plaintiff's complaint alleged in two counts the following facts. In 1988, plaintiff began a search for a site upon which to construct a regional distribution center. Twenty-five sites in Cook, Will, Kane, and Du Page Counties in Illinois were reviewed. Six of these sites were located in Will County.

On February 3, 1988, John A. Annerino, chairman of the Will County board, sent a letter to the Joliet-Will County Center for Economic Development, which had been designated by Will County as the County's Economic Development Program Review Board. In that letter, a copy of which was passed on to representatives of plaintiff, Annerino stated, "[t]he County usually offers a three-year 100% abatement of taxes on expansion of businesses increasing jobs for Will County residents and to new companies locating in Will County." Subsequently, plaintiff was advised by the Joliet-Will County Center for Economic Development that plaintiff's project would be eligible for real estate tax abatement from Will County.

Plaintiff alleges that, in reliance on the representations of the availability of abatements, plaintiff entered into a contract to purchase 55 acres in Will County. On December 11, 1989, plaintiff filed a request with Adelman for a property tax abatement. The estimated annual abatement ranged from $23,130 to $30,840. On December 21, 1989, the Will County board adopted resolution 89—332, which authorized the Will County executive to enter into an agreement of intent to abate property taxes with plaintiff upon the execution of such agreement by plaintiff. On December 28, 1989, Adelman signed the agreement and sent the signed copy to the Will County clerk, but at no time was the agreement forwarded to plaintiff.

Plaintiff further alleges that in reliance on the resolution and the signing of the agreement by Adelman, plaintiff (1) purchased the subject site on March 21, 1990, at a cost of $1,375,000, (2) applied for and received a building permit from the City of Joliet at a cost of $29,069, and (3) expended a sum in excess of $7,630,400 on the project. On April 20, 1990, plaintiff delivered to the office of the County executive page 7 of the agreement signed by Michael Park Miller on

behalf of plaintiff on April 18, 1990. Adelman had previously signed page 7. On May 10, 1990, according to plaintiff's complaint, at a special meeting of the Will County board, a motion was adopted purporting to repeal the resolution and to deny the tax abatement to plaintiff.

In count II of plaintiff's complaint, it is further alleged that Adelman was obligated by section 9 of the County Executive Act (Ill. Rev. Stat. 1987, ch. 34, par. 709, now section 2—5009 of the County Executive Law (Ill. Rev. Stat. 1989, ch. 34, par. 2—5009)) to faithfully execute all orders, resolutions, and regulations of Will County. Nevertheless, Adelman has refused and continues to refuse to execute the agreement even after having received the signed page 7 of the agreement on April 20, 1990.

In count I, plaintiff sought to have the circuit court declare resolution 89—332 and the agreement valid and binding upon the parties and to declare as a nullity the action of the county to repeal the tax abatement. Count II requests the issuance of a writ of *mandamus* against Adelman.

■ The basis for defendants' motion to dismiss pursuant to section 2—619 was that Will County was without authority to abate taxes. Section 162 of the Revenue Act provides, in pertinent part:

> "Any taxing district, upon a majority vote of its governing authority, may, after the determination of the assessed valuation of its property, order the clerk of that county to abate any portion of its taxes on the property of any commercial or industrial firm locating within the taxing district during the immediately preceding calendar year from another state, territory, or country, or having been newly created within this State during the immediately preceding calendar year, or for an expanded previously existing facility. Such abatement shall not exceed a period of 10 years and the total aggregate amount of abated taxes for all taxing districts combined shall not exceed $1,000,000." (Ill. Rev. Stat. 1989, ch. 120, par. 643.)

The defendants submitted in support of their motion the affidavit of Michael Makofski, an employee of the Will County supervisor of assessments office, and a certified copy of the building permit issued by the City of Joliet, both of which demonstrate that the subject property did not have a previously existing Toys "R" Us facility on that property. Defendants also asked the circuit court to take judicial notice of Will County circuit court case Nos. 87—TX—0001, 87—TX—1003, and 88—TX—1017, which defendants argued demonstrate plain-

tiff had an existing commercial facility within the State of Illinois at a location other than the subject property.

In support of plaintiff's response to the motion to dismiss, plaintiff attached two exhibits. The first exhibit was an affidavit from plaintiff's assistant secretary, Steven Taplits, which stated plaintiff is constructing a 650,000-square-foot regional distribution facility in Joliet, which facility will replace and is a relocation of an existing distribution facility in Milwaukee, Wisconsin, and it is an expansion of a 357,000-square-foot distribution facility currently in operation in Melrose Park, Illinois. The second exhibit is a copy of a letter from the State's Attorney of Will County to Adelman concerning the effect of his signing the agreement before plaintiff's representative signed it, the potential liability, and the defensibility of defendants' position.

In granting the defendants' section 2—619 motion, the trial court found, in addition to the facts alleged, that plaintiff has an existing retail facility in Will County, Illinois. The court also found that Will County is not a home-rule unit of government and is authorized to abate property taxes by section 162 of the Revenue Act. Relying on an opinion by the Illinois Attorney General (1982 Ill. Att'y Gen. Op. 24), the trial court found that the locating of a new facility in a taxing district by a business already operating in Illinois does not fall within any of the three categories of section 162, which authorizes an abatement of property taxes. As a result, the trial court determined that the statute does not authorize Will County to extend real estate tax abatements to plaintiff and the actions of defendants in attempting to do so are null and void.

██ The only issue raised is whether section 162 of the Revenue Act authorizes a county board to grant a real estate tax abatement for the relocation and expansion of a corporation's regional distribution center and, if not, whether the trial court properly dismissed the property owner's declaratory judgment action asking it to declare as a nullity the resolution which repealed the earlier resolution granting the abatement. As a result, the parties' arguments focus on the statutory construction placed on section 162 by the Attorney General. As noted in the Attorney General's opinion, there are three categories for which the statute allows an abatement of real estate taxes. One of these categories involves an industrial or commercial firm which is "newly created" within Illinois during the immediately preceding year. Plaintiff is not such a newly created firm and does not argue that the newly created firm category applies to this case.

Another category to which the statute allows tax abatement is for the property of a commercial or industrial firm locating within the

taxing district during the immediately preceding year from another State, territory, or country. However, the applicability of this category to the case at bar need not be discussed since we now hold the abatement was authorized under the third category.

■■ The third category of the statute in question allows real estate tax abatement "for an expanded previously existing facility." Plaintiff contends the trial court wrongly relied on the Attorney General's opinion No. 82–010. Plaintiff argues the Attorney General improperly utilized rules of statutory construction to construe an unambiguous statute. Plaintiff further argues that the Attorney General, in defining this statutory category, impermissibly added a limiting phrase "within the taxing district" to this category so that the Attorney General's definition allows abatement of taxes when a firm "expands a previously existing facility within the taxing district." (1982 Ill. Att'y Gen. Op. at 26.) We agree this category of the statute is unambiguous.

■■ ■ Judicial construction of a statute is necessary only when the statute is unclear or ambiguous. (*Bergeson v. Mullinix* (1948), 399 Ill. 470, 78 N.E.2d 297; 34 Ill. L. & Prac. *Statutes* §101 (1958).) This rule is applied even though the language may be considered unwise or to cause a serious impairment to the statute as a whole. (*In re Jankowski* (1976), 38 Ill. App. 3d 95, 347 N.E.2d 474; 34 Ill. L. & Prac. *Statutes* §101 (1958).) Construction and interpretation of a statute is a question of law for the court and, regardless of the court's opinion regarding the desirability of the results surrounding the operation of the statute, the court must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249; *People v. McCoy* (1975), 29 Ill. App. 3d 601, 332 N.E.2d 690, *aff'd* (1976), 63 Ill. 2d 40, 344 N.E.2d 436; 34 Ill. L. & Prac. *Statutes* §102 (1958).) In ascertaining the meaning of a disputed statute, the threshold task of the court is to examine the terms of the statute. *People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.

Plaintiff contends that since the statute authorizes a tax abatement "for an expanded previously existing facility," and the trial court found plaintiff's new Joliet facility was intended to be an "expansion" of plaintiff's previously existing Melrose Park facility, then the statute should allow an abatement in the instant case. The key words to be defined are "expand" and "facility."

■■ ■ While there are other meanings of the word "expand" which have no apparent application to the case at bar, for the purpose of this case, "expand" means to increase the extent, number, volume, or scope of, to enlarge, or to extend. (*Federal Electric Co. v. Zoning Board of Appeals* (1947), 398 Ill. 142, 75 N.E.2d 359; Webster's Ninth New Collegiate Dictionary 436 (1990).) The word "facility" also has varying definitions, but the one which appears to have the most appropriate application to the case at bar is a thing, such as a hospital, "that is built, installed, or established to serve a particular purpose." Webster's Ninth New Collegiate Dictionary 444 (1990).

In this case there is no preexisting Toys "R" Us establishment functioning on the subject property or apparently on any property adjacent to the site. The trial court reasoned that since there was no Toys "R" Us in operation on the site, plaintiff's project was not an expansion of a previously existing facility. With one exception, the ordinary meanings of the words employed in the statute support this conclusion by the trial court. The exception lies in that portion of the definition of the word "expand" which means "to increase in number."

■■ If expand means to increase in number, then a facility can be expanded by building a second facility. And, if this definition is utilized, why does the second facility have to be in the same taxing district as the Attorney General opinion requires? The discussion of Representatives McPike and Davis, quoted by the Attorney General, indicates that the bill's sponsor in the Illinois House of Representatives was of the opinion that a corporation currently doing business in Cook County, Illinois, could not get a tax abatement by moving to Will County or La Salle County, Illinois. However, that discussion seems to pertain more to the category relating to firms relocating to Illinois from another State, territory, or country, and not to the third category regarding expanded facilities. The purpose of the statute was to facilitate attracting business enterprises to Illinois. However, competition between counties for business enterprises already operating facilities within the State was not intended to be encouraged. (1983 Att'y Gen. Op. 69, 72, quoting 82d Ill. Gen. Assem., House Proceedings, June 17, 1981, at 155 (statements of Representative Davis) (debates on Senate Bill 486).) This case does not involve competition between counties within Illinois under the facts presented to this court.

Obviously, the legislature was concerned about the possible loss of jobs in one county when companies relocate to other counties in Illinois. However, merely because an additional facility is built in Will

County does not necessarily mean jobs would be lost in Cook County, for example, and because of the proximity, residents of Cook County may even benefit. While the legislature did not want Illinois counties to compete against each other when a company is already doing business in Illinois, the legislature did not expressly require that the expansion of the facility occur in the same taxing district wherein the preexisting facility was situated. Had the legislature intended such a result, the statute would have included such a requirement.

Plaintiff's new Will County distribution center being an expansion of a preexisting facility in Melrose Park, Will County had authority to abate real estate taxes on plaintiff's new Will County facility. For this reason, the order of the circuit court of Will County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LUND, P.J., and GREEN, J., concur.