ROBERT DeWIG, Plaintiff-Appellant, v. LANDSHIRE, INC., Defendant-Appellee.

Third District    No. 3—95—0567

Opinion filed May 30, 1996.

140

BRESLIN, P.J., dissenting.

Eric B. Deobler (argued), of White, Marsh, Anderson, Brusatte, Vickers & Deobler, of Ottawa, for appellant.

Douglas A. Gift (argued) and Jill W. Klein, both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for appellee.

JUSTICE MICHELA delivered the opinion of the court:

This is an action for unpaid overtime compensation brought by plaintiff-appellant, Robert DeWig (DeWig), against his former employer, defendant-appellee, Landshire, Inc. (Landshire). The trial court granted Landshire's motion for summary judgment, finding that DeWig was exempt from the overtime provision of the Minimum Wage Law (820 ILCS 105/1 *et seq.* (West 1994)) because he was an "outside salesman," an employment position excluded from overtime compensation coverage by the statute. DeWig appeals, claiming his employment status falls outside the above exception or at least creates a triable question of fact. We disagree and affirm.

The pleadings and discovery in the record, construed in DeWig's favor, supply the following facts. Landshire is in the business of selling sandwiches and delicatessen foods to convenience stores, schools and other outlets. Its products are delivered to these outlets by "route salesmen." DeWig was employed in such capacity from October 1987 to February 1989.

DeWig was assigned a route based at Landshire's depot in Sandwich, Illinois. His daily routine was substantially as follows. At the beginning of each day, DeWig would receive a route book which detailed the stops he was to make and the order in which he was to make them. After making an inventory of the items in his truck, DeWig proceeded on his route, which serviced between 20 and 25 outlets per day. Most of the outlets DeWig serviced were located in Chicago.

When he arrived at a stop, DeWig would remove outdated products from the shelves and replace them with new products. He would then determine the amount owed and collect cash or a credit slip from the store manager. It took DeWig at least 20 minutes per stop to perform these duties. Upon completing the route, DeWig would return to the Sandwich depot, inventory the unused product, and perform other administrative tasks. This entire process took approximately 11 hours per day to complete.

DeWig's compensation was determined by a schedule of commissions which was included in his written employment contract. The schedule provided that DeWig would receive 5% of cash sales and 3% of credit sales, plus $1 per stop for each store that purchased a minimum amount of Landshire products. If, however, his commissions did not reach a base weekly amount, DeWig would receive at least the base amount, which for most of his employment was $350. In addition, DeWig would receive a bonus for every new account he acquired, provided the account produced a certain amount of sales over a three-month period.

DeWig knew that Landshire expected him to increase his sales to existing customers and to acquire new customers. Toward this end, DeWig solicited additional shelf space for Landshire products, attended occasional employee sales meetings, and participated in at least one sales contest. Despite these efforts, the record shows that over a 69-week period in which he was employed, DeWig received the $350 base weekly payment 58 times. Moreover, although DeWig was paid somewhere between $500 and $730 over the course of his employment for acquiring new customers, he estimated that about 90% of the customers were placed on his route without his solicitation efforts.

On the basis of these facts, the trial court found that DeWig was an outside salesman and thus was not entitled to overtime compensation under the Minimum Wage Law. The court accordingly entered summary judgment in Landshire's favor, from which DeWig takes this appeal.

■ The only issue on appeal is whether DeWig was an "employee" within the meaning of the Minimum Wage Law. Section 4a of the Minimum Wage Law provides that employers must pay employees time and a half for hours worked over 40 per week. 820 ILCS 105/4a (West 1994). Generally, all employees are subject to the protections afforded by the Minimum Wage Law. See 820 ILCS 105/4(a) (West 1994). However, the legislature has specifically exempted certain occupations from coverage. See 820 ILCS 105/3(d) (West 1994). In particular, section 3(d)(4) states that "outside salesmen" shall not be considered "employees" for purposes of the Minimum Wage Law. 820 ILCS 105/3(d)(4) (West 1994). "Outside salesman" is defined as "an employee regularly engaged in making sales or obtaining orders or contracts for services where a major portion of such duties are performed away from his employer's place of business." 820 ILCS 105/3(g) (West 1994).

It is conceded by DeWig that he was "an employee *** where a major portion of [his] duties [were] performed away from his

employer's place of business." Also, the parties agree that the language referring to "obtaining orders or contracts for services" is irrelevant to the present dispute. Thus, we are left with determining whether DeWig was "regularly engaged in making sales" in his employment activities. There are no cases or regulations interpreting the "outside salesman" definition under the Minimum Wage Law. However, we find that under its stated definition, DeWig was an "outside salesman" and thus exempt from overtime compensation coverage.

DeWig contends that where there is doubt as to how a statute should be construed, "[a]ll general provisions, terms, phrases and expressions [should] be construed in order that the true intent and meaning of the General Assembly may be fully carried out." 5 ILCS 70/1.01 (West 1994). According to DeWig, since the remedial intention of the Minimum Wage Law is beyond debate, it is entitled to a liberal construction. We disagree.

●2 It may be true that the fundamental purpose of statutory construction is to give effect to the legislature's intent, including the evils to be remedied and the purposes to be served by its enactment. *In re Petition of K.M.*, 274 Ill. App. 3d 189, 653 N.E.2d 888 (1995). However, such rules of strict or liberal construction have no application where the language of a statute is clear. *In re Petition of K.M.*, 274 Ill. App. 3d 189, 653 N.E.2d 888 (1995). Further, unless otherwise defined, words used in the statute are to be given their plain, ordinary meaning. *Granite City Division of the National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 613 N.E.2d 719 (1993).

■ In the present case, the term "outside salesman" is clearly defined and DeWig's employment activities fall within the stated definition. At each stop, DeWig inventoried, removed and stocked product. He determined what was needed and billed the outlet accordingly. He alone solicited his product and completed the transaction with his customers. In sum, throughout each day of his employment, DeWig, by definition, regularly engaged in making sales to his customers.

DeWig, however, argues that he was nothing more than a route driver, making deliveries to already established accounts. He looks to the near impossibility of actually earning sales commissions to any significant degree above the wage base. Further, according to DeWig, a traditional "outside salesman" is one who uses his or her own talents, energies and initiative, without direct employer control or supervision, to find clients or to place orders for goods or services in the community at large. We agree with DeWig that he was not a salesman in the traditional sense. His occupation was more of a

hybrid between a deliveryman and a salesman. In fact, it encompassed both functions. However, the legislature has clearly set forth the parameters for which the term "outside salesman" applies. It makes no mention of commission potential or employer control as factors to be considered. It only lays out a pattern of conduct as its definition, with such pattern of conduct clearly applying to DeWig's employment activities.

■ DeWig last contends that this issue is one for the finder of fact. We disagree. Construction and interpretation of a statute are questions of law to be decided by the court and, regardless of the court's opinion regarding the desirability of the results surrounding the operation of the statute, the court must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations or conditions, or otherwise change the law so as to depart form the language employed in the statute. *Toys "R" Us, Inc. v. Adelman*, 215 Ill. App. 3d 561, 574 N.E.2d 1328 (1991); *Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4*, 215 Ill. App. 3d 506, 575 N.E.2d 556 (1991). Further, statutory construction is appropriate for resolution by summary judgment. *Purlee v. Liberty Mutual Fire Insurance Co.*, 260 Ill. App. 3d 11, 631 N.E.2d 433 (1994).

Accordingly, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER, J., concurs.

PRESIDING JUSTICE BRESLIN, dissenting:
Consider the implications of the majority's decision by changing the facts a bit. Suppose the owner of a landscaping business sends his employees to customers' homes to cut grass, trim bushes, and perform various other yardwork. The employees spend approximately 9 to 12 hours per day in the performance of these duties. At the end of each day, the employees are required to spend a half hour canvassing the customers' neighborhoods, offering the business' services to other homeowners.

The majority's analysis would mandate a finding under these facts that the employees are outside salesmen and therefore exempt from the Minimum Wage Law's provisions. The legislature, however, did not intend the outside salesman exemption to be so generous. The Minimum Wage Law was enacted in part to minimize the State's

burden of supporting its inhabitants at a minimum standard of living. See 820 ILCS 105/2 (West 1992). If the employees in my hypothetical would be subject to the outside salesman exemption, then employers would be able to claim the exemption for almost all occupations involving outside work through minor adjustments in their employees' job duties. Employers would thus reap the benefits of substantial nonsales labor without paying overtime or the minimum wage, which in turn would place the State in a position to make up the shortfall through public aid.

The majority nonetheless finds itself constrained from considering policy implications because of the "outside salesman" definition's plain meaning. I would think that if any phrase could be subject to different interpretations, it would be "regularly engaged in making sales." In particular, examples from common usage show that "regular" is assigned a peculiar meaning to fit the circumstances.

Consider the manufacturer's admonishment on a tube of toothpaste: "see your dentist regularly." If someone visits the dentist once every five years, has he heeded this admonishment? Most of us would think not. But why? The dictionary meaning of "regular" is "steady or uniform in course, practice, or occurrence." Webster's Third New International Dictionary 1913 (1986). Using this definition, it might be said that the person who visits his dentist every five years does so regularly, inasmuch as his visits recur in a steady or uniform manner. The reason we insist that this person does not visit the dentist regularly is that we have assigned a particular meaning to "regular" as applied to dental visits, which meaning the dictionary cannot capture.

The majority's claim that "regularly engaged in making sales" has a plain meaning is therefore false, and the meaning it attaches to that phrase does violence to the Minimum Wage Law's remedial purposes. But it is not enough to criticize; for, as the saying goes, it is better to light a candle than curse the darkness. There is a better way to interpret the "outside salesman" definition, one that would appropriately restrict the availability of the exemption.

Where there is no case law construing a state labor statute, it is the policy of this court to consider decisions construing a substantially similar federal statute. *Bernardi v. Village of North Pekin*, 135 Ill. App. 3d 589, 482 N.E.2d 101 (1985). The federal minimum wage statute, the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 *et seq.* (1994)), exempts outside salesmen from its purview (See 29 U.S.C. § 213(a)(1) (1994), and the Department of Labor has promulgated a definition of "outside salesman" for the FLSA's purposes that is substantially similar to the state definition. See 29 C.F.R. § 541.5

(1995). In view of the purposes underlying the Minimum Wage Law and the FLSA (compare 820 ILCS 105/2 (West 1992) with 29 U.S.C. § 202 (1994)), the state definition of "outside salesman" should be read in a manner consistent with the federal definition.

Under the federal definition, a route salesman will not be deemed exempt from minimum wage provisions unless his employer can establish that his chief duty or primary function is to make sales. See 29 C.F.R. § 541.505(a) (1995). To determine whether this "primary function" test has been met, the courts consider the nature of the job as a whole, taking into account the actual amount of time a route salesman spends performing various sales and nonsales duties, the amount of autonomy an employee has in making sales transactions, and whether the employee's compensation is tied to his sales ability. See generally *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975); *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377 (6th Cir. 1970); *Jewel Tea Co. v. Williams*, 118 F.2d 202 (10th Cir. 1941); *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F. Supp. 1102 (M.D.N.C. 1972).

The primary function test, as applied to route drivers, is entirely consistent with the Minimum Wage Law's purposes. Under the Minimum Wage Law, outside salesmen are exempt from minimum wage and overtime provisions; outside deliverymen are not. Consistent with the rule that exemptions from remedial statutes should be narrowly construed (*Krispy Kreme Doughnut Co.*, 346 F. Supp. at 1103), the exemption should be available only if a route driver position looks more like a sales position than a delivery position. Unlike the majority's plain meaning test, the primary function test enforces this limitation.

Applying the primary function test to the facts in this case, DeWig was not an outside salesman as a matter of law. He spent from six to eight hours a day essentially stocking shelves (20 to 25 outlets per day multiplied by 20 minutes per stop), and had to travel from Sandwich to Chicago to service his customers. Given that DeWig worked approximately 11 hours per day, it may be inferred that the greater portion of his time was spent in the performance of nonsales duties.

In addition, the record shows that DeWig was entitled to commissions if he made sales over a base weekly amount, but for the large majority of weeks during his employment he received only the base amount. This might suggest that DeWig was a poor salesman or it might suggest that the commission portion of Landshire's wage structure was based upon unattainable sales goals. If the latter view is taken, the finder of fact could reasonably infer that, in practice, Landshire paid its route salesmen a set wage that was not tied to their salesmanship skills.

If Landshire indeed hired DeWig for the purpose of making sales and if it can be inferred that DeWig spent little time engaged in sales activities, it may fairly be questioned why Landshire continued to employ him for a period of more than 60 weeks. One answer might be that Landshire received a benefit from DeWig's continued employment in the form of the deliveries he made to Landshire customers. Whether this was indeed the primary benefit Landshire received by employing DeWig should be decided by the finder of fact.

For the foregoing reasons, I respectfully dissent.