In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1273

ROBERT T. ALMY,

*Plaintiff-Appellant,*

*v.*

KICKERT SCHOOL BUS LINE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 2902—**Robert M. Dow, Jr.**, *Judge.*

SUBMITTED JUNE 13, 2013—DECIDED JULY 16, 2013

Before MANION, SYKES, and TINDER, *Circuit Judges.*

PER CURIAM. Robert Almy, a school bus driver, appeals the grant of summary judgment for his former employer in this action for overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219. Congress, however, has exempted a range of employees from the act's overtime provisions, including interstate drivers whose maximum hours are regulated by the Department of Transportation, 29 U.S.C. § 213(b)(1). The district court

concluded that Almy, as an interstate school bus driver, falls within this "motor-carrier exemption." We affirm.

## I. Facts

Almy lives in Hammond, Indiana, and he began working for Kickert School Bus Line in 2000. Kickert's bus terminal is located in Lynwood, Illinois, just across the state border from Indiana. Almy drove roughly the same bus route each year, and as part of his regular route from 2005 to 2008, he would pick up children at private schools in Illinois and drop them off at their homes in Indiana. In addition to his regular route, Almy also drove charter trips for Illinois schools, and would occasionally pick up children at Illinois schools and drive them to destinations in Indiana.

Almy believed that Kickert was under-paying him in three ways. First, under his workplace's collective bargaining agreement, he did not receive a higher hourly rate of pay for overtime, even though he worked more than 40 hours per week. Second, he stated that he was not paid for the 20 minutes it took him to prepare his bus each morning or for the time required in the afternoon for fueling, cleaning, and paperwork. Finally, he was not paid during charter trips for "dead-head" time—the amount of time it took to drive the empty bus to the school and then back to the bus terminal.

After Kickert began providing overtime pay in early 2008, Almy sued under the Fair Labor Standards Act for back pay for the years he had not received overtime.

29 U.S.C. § 216(b). The FLSA generally requires employers to pay 1.5 times the regular hourly wage to any employee who works more than 40 hours in a week. 29 U.S.C. § 207(a). Other Kickert bus drivers joined the suit under the FLSA's collective-action provision, but they later settled and are not involved in this appeal. Almy also brought two state-law claims: one for overtime wages under the Illinois Minimum Wage Law, 820 ILCS 105, and another for back pay under the Illinois Wage Payment Collection Act, 820 ILCS 115.

On the parties' cross-motions for summary judgment, the district court concluded that school bus drivers who transport passengers across state lines fall within the motor-carrier exemption, making them ineligible for overtime pay. 29 U.S.C. § 213(b)(1). These employees are exempt under the FLSA because the exclusive authority to set maximum hours for "motor carriers" is vested in the Secretary of Transportation by another federal statute, the Motor Carrier Act, 49 U.S.C. § 31502(b)(1); this exclusive authority covers anyone paid to transport passengers across state lines, *id.* §§ 31501(2), 13102(14), 13501(1)(A). Almy pointed to language elsewhere in the Motor Carrier Act specifying that the Secretary lacks "jurisdiction under this part over . . . a motor vehicle transporting only school children and teachers to or from school," 49 U.S.C. § 13506(a)(1), but the district court—relying on cases from other circuits and disagreeing with an earlier case from the Northern District of Illinois, *Mielke v. Laidlaw Transit, Inc.*, 102 F.Supp.2d 988, 992 (N.D. Ill. 2000)—concluded that this provision applies to a

different part of the Motor Carrier Act, namely its registration and insurance requirements. The court then denied the motions and ordered discovery to determine if Kickert's drivers transported passengers across state lines.

The district court ultimately found that Almy had transported passengers across the Illinois-Indiana border as part of his regular route and granted summary judgment for Kickert. In a comprehensive and well-reasoned opinion, the court reaffirmed its conclusion that interstate school bus drivers fall within the motor-carrier exemption. The court dismissed Almy's claim for overtime wages under the Illinois Wage Payment Collection Act for failure to exhaust the grievance process. The court determined that this was a claim governed by federal law because it required interpreting a collective bargaining agreement. *See* 29 U.S.C. § 185(a). Finally, exercising supplemental jurisdiction, the court granted summary judgment to Kickert on Almy's claim for overtime under the Illinois Minimum Wage Law because that law exempts workers covered by the Motor Carrier Act—an act that the court had already determined applies to Almy. *See* 820 ILCS 105/3(d)(7).

## II.  Analysis

On appeal, Almy argues that the district court erred in finding him exempt from the FLSA's overtime requirement, and he maintains that as a school bus driver he is *not* a motor carrier with respect to whom the Secretary of Transportation can set maximum hours, *see* 49 U.S.C.

§ 31502(b)(1), the same view that a district court took in *Mielke*, 102 F.Supp.2d at 992. Almy's argument builds on the interplay among three different sections of the Motor Carrier Act. He asserts that § 31502 (the section granting the power to set maximum hours), by referencing § 13501 (a general jurisdiction section), impliedly incorporates the language in another part of that jurisdictional chapter concerning school bus drivers—§ 13506(a)(1). Specifically, Almy contends that § 13506(a)(1), in depriving the Secretary of jurisdiction "under this part" over interstate school bus drivers, limits the jurisdictional scope of § 13501 and thus precludes the Secretary from setting maximum hours for school bus drivers.

But all of the circuit courts to address the exemptions listed in § 13506 and the similarly worded § 13505 have ruled that the employees covered by these sections are exempt from the FLSA's overtime requirement; these sections, according to the courts, do not divest the Secretary of power to set maximum driving hours. As the district court noted, one circuit has considered the exemption in § 13506(a)(8)(A) as part of a lawsuit for overtime wages and ruled that § 13506 did not limit the Secretary's power to set maximum hours. *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1233 (11th Cir. 2009). Likewise, three circuits have ruled that the Secretary's power to set maximum hours is also not limited by the exemption in § 13505, which states that "[n]either the Secretary nor the Board has jurisdiction under this part over the transportation of property by motor vehicle when . . . the property is transported by a person

engaged in a business other than transportation," 49 U.S.C. § 13505(a)(1); according to these circuits, § 13505 does not impliedly limit the scope of § 13501. *See Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 225-26 (2d Cir. 2002); *Klitzke v. Steiner*, 110 F.3d 1465, 1468-69 (9th Cir. 1997); *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 413 (3d Cir. 1992). Because sections 13505 and 13506 both explicitly divest the Secretary of "jurisdiction under this part," these circuit rulings are persuasive authority.

Almy's reading is at odds with the Motor Carrier Act's plain language and structure. First, the section giving the Secretary of Transportation power to set maximum hours explicitly applies to transportation "described in sections 13501 and 13502 of this title." 49 U.S.C. § 31502(a)(1). Congress thus authorized the Secretary to set maximum driving hours for all transportation described in two specific sections of the Motor Carrier Act, without including the limitations listed in later sections, such as 13505 and 13506. Indeed, § 31502 actually refers to one set of limitations—§ 13502, which exempts certain transportation between Alaska and other states—but not to any other statutory exemptions. *See Walters*, 575 F.3d at 1232. Second, the structure of the Motor Carrier Act supports this reading: the act is divided into two subtitles of Title 49, the U.S. Transportation Code, one of which generally contains the Department of Transportation's economic regulations (Subtitle IV), and the other its safety regulations (Subtitle VI). Sections 13501 to 13508 provide the scope of jurisdiction for the *economic* regulations, not the safety regulations. Joining with our sister circuits, we

hold that the exemption listed in 49 U.S.C. § 13506(a)(1) does not divest the Secretary of Transportation of the power to set maximum driving hours for interstate school bus drivers.

Almy next argues that the district court's interpretation conflicts with congressional intent because, he says, comparing the current version of § 13506 with an earlier version shows that Congress wanted to exempt school bus drivers from the Secretary of Transportation's jurisdiction. As Almy notes, the current statute no longer contains language that expressly acknowledges the Secretary's power to set standards for maximum driving hours for school bus drivers—language that appeared in a prior version:

> Nothing in this part, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment[,] shall be construed to include . . . motor vehicles employed solely in transporting school children and teachers to or from school.

Motor Carrier Act of 1935, ch. 498, 49 Stat. 543, 546 (1935) (formerly codified at 49 U.S.C. § 303(b)(1)); *see Levinson v. Spector Motor Serv.*, 330 U.S. 649, 658 & n.9 (1947).

But Almy reads too much into the differences between the two versions because he misses the intervening reorganization of the Motor Carrier Act after Congress created the Department of Transportation in 1966. As reflected in the legislative history, § 13506 and its prior versions have always served to exempt

school bus drivers from *economic* regulations—not from safety regulations, such as maximum driving hours. Before 1966, both economic and safety regulations fell under the purview of the Interstate Commerce Commission (ICC), *see Morris v. McComb*, 332 U.S. 422, 434-35 (1947), so Congress had to specify that the ICC retained the power to set maximum driving hours, even though it could not otherwise regulate interstate school bus drivers. After Congress created the Department of Transportation in 1966, however, the power to set maximum hours was transferred to a new entity—the Secretary of Transportation. *See* Department of Transportation Act, Pub. L. No. 89-670, 80 Stat. 931, 939 § 6(e)(6)(C) (1966). Congress removed the now irrelevant reference to maximum hours and amended the provision to nearly its present form, stating: "The Interstate Commerce Commission does not have jurisdiction under this subchapter over . . . a motor vehicle transporting only school children and teachers to or from school." Revised Interstate Commerce Act of 1978, Pub. L. No. 95-473, 92 Stat. 1337 (1978) (formerly codified at 49 U.S.C. § 10526). Comparing *that* version with the current one shows that there has been a change not in the section's meaning, but only in the authority responsible for economic regulation of motor carriers. Congress adopted the present version when it abolished the ICC and transferred its economic regulatory powers to the Secretary and Surface Transportation Board. *See* ICC Termination Act, Pub. L. No. 104-88, 109 Stat. 861 (1995). The prior language about maximum driving hours was still superfluous, however, because the economic and safety reg-

ulations of the Motor Carrier Act had now been split into two separate subtitles, *see Walters*, 575 F.3d at 1233, so limiting jurisdiction "under this part" applied only to the economic regulations contained in that "part" of the act.

Almy also argues that the district court failed to recognize that he was exempt from maximum driving hours by regulation when it interpreted the Transportation Department's regulations too narrowly. Almy notes that the Department exempts school bus drivers from maximum driving hours "[u]nless otherwise specifically provided," *see* 49 C.F.R. § 390.3(f)(1), which, he maintains, is not the case here. It is true that Almy's hours are largely unregulated, but so long as the Secretary has the power to set maximum hours, the FLSA's motor-carrier exemption applies. *See Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47-48 (1943); *Klitzke*, 110 F.3d at 1468. The Department acknowledges its power to set safety regulations for interstate school bus drivers, explaining that an "[e]xempt motor carrier means a person engaged in transportation exempt from economic regulation by the Federal Motor Carrier Safety Administration (FMCSA) under 49 U.S.C. 13506. 'Exempt motor carriers' are subject to the safety regulations set forth in this subchapter." 49 C.F.R. § 390.5; *see Walters*, 575 F.3d at 1233. And the Department has exercised this power by issuing regulations that apply to school bus drivers, such as a ban on texting while driving. 49 C.F.R. §§ 390.3(f)(1), 391.15, 392.80. Although the limits on maximum driving hours exempt bus trips between home and school (presumably because these trips are by their very nature of limited distance and duration), 49 C.F.R.

§§ 390.5, 390.3(f)(1), other chartered school trips must abide by the regulations for short-haul opera-tors—regulations that require record-keeping and eight hours' rest between driving periods, 49 C.F.R. § 395.1(e)(1)(iii)(B), (e)(1)(v).

Almy's alternative arguments concerning the Motor Carrier Act are nonstarters. He contends that the district court ignored evidence that Kickert had not registered as a motor carrier with the Department of Transportation and therefore is not a motor carrier under the act. But for purposes of the FLSA, an employer's registration is irrelevant because the key issue is the Secretary's power to set maximum driving hours, not the employer's compliance with unrelated registration requirements. *See Collins v. Heritage Wine Cellars, LTD*, 589 F.3d 895, 897 (7th Cir. 2009). Almy also asserts that the court attributed powers to the Secre-tary that actually belong to the Federal Motor Carrier Safety Administration, an agency within the Transporta-tion Department. *See* 49 U.S.C. § 113(f)(1). But as the district court correctly noted, the only relevant issue is whether the power to control hours falls under the Department of Transportation or the Department of Labor. *See Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660-61 (7th Cir. 2011). Here the Department of Trans-portation has the power to control Almy's hours, thus excluding him from the FLSA's overtime provisions. *See* 29 U.S.C. § 213(b)(1).

Concerning his state-law claims, Almy contends that the district court erred in finding him exempt under

the Illinois Minimum Wage Law, arguing that a state-law exemption for motor carriers does not apply to him. But the state law exempts any person who works "[f]or a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C." 820 ILCS 105/3(d)(7); *see DeWig v. Landshire, Inc.*, 666 N.E.2d 1204, 1206 (Ill. App. Ct. 1996) (listing employees exempt from overtime provisions under Illinois law). Because the district court correctly determined that the Secretary of Transportation has the power to regulate Almy's maximum driving hours, it properly exercised its supplemental jurisdiction to grant summary judgment on this state-law claim. *See* 28 U.S.C. § 1367; *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 772 (7th Cir. 2008).

Finally, Almy asserts that his state-law claim under the Illinois Wage Payment Collection Act is not governed by federal law, arguing that the district court erred in concluding that his claim required interpretation of his collective bargaining agreement. As Almy notes, the National Labor Relations Act does not preempt state-law claims where the union's agreement is only tangentially related to the employee's claim, *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 285 (7th Cir. 2001), and he contends that his only remaining issue concerns what counts as "work," a term not defined in his collective bargaining agreement. But Illinois law entitles workers to the compensation owed under their employment agreement, *see* 820 ILCS 115/2,

so the resolution of Almy's claim depends on construing the collective bargaining agreement between Kickert and the union. It is therefore governed by federal law. *See* 29 U.S.C. § 185(a); *In re Bentz*, 253 F.3d at 289; *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 864 (7th Cir. 1998).

Almy concedes that he did not exhaust the grievance process before suing—a prerequisite to federal jurisdiction, *see Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 803 (7th Cir. 2008); *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007)—and instead argues that the district court should have found that he satisfied a futility exception to the exhaustion requirement because he filed a grievance and then sued after four months of waiting when he received no response. Although Almy describes a number of possible problems now that he no longer works for Kickert or belongs to the union, his speculation—unsupported by evidence in the record—does not show that union officials will refuse to grieve his complaint moving forward or that Kickert has repudiated the formal grievance process. Thus the district court properly concluded that he had not met his burden of proving futility. *See McCoy*, 495 F.3d at 525; *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001).

AFFIRMED.