## DAVID DAVIS v. HENRY BURGESS.

*Breach of the peace.*

1. Where a case is left to the jury on the question of damages only the verdict must stand unless a sufficient justification appears from defendant's showing.

2. The use of grossly indecent, profane and abusive language towards another person upon the public street and in the presence of others is a breach of the peace.

3. A peace-officer may arrest for a breach of the peace committed against himself as well as for those committed against others.

Error to Wayne. (Jennison, J.) June 17.—Sept. 23.

CASE. Defendant brings error. Reversed.

*Edwin F. Conely, Henry A. Chaney* and *Wm. A. Moore (Moore & Canfield)* for appellant, cited as to the definition of a breach of the peace, *Com. v. Jeandell* 2 Grant 506; *Com. v. Teamann* 1 Phil. 460; *Com. v. Foley* 99 Mass. 497: Desty's Amer. Crim. Law § 91 *a*; *Cohen v. Huskisson* 2 M. &

W. 482; *Webster v. Watts* 11 Q. B. 311; *Howell v. Jackson* 6 C. & P. 723; public profanity is indictable at common law: *People v. Ruggles* 8 Johns. 290; *State v. Jones* 9 Ired. 38; *State v. Chandler* 2 Har. (Del.) 553; *Updegraph v. Com.* 11 S. & R. 394; *State v. Kirby* 1 Murphy 254; *Com. v. Kneeland* 20 Pick. 206; *State v. Ellar* 1 Dev. 267; *Bell v. State* 1 Swan 42; *Holcomb v. Cornish* 8 Conn. 375; *Com. v. Hardy* 1 Ashm. 410; *Odell v. Garnett* 4 Blackf. 549; as to the power to arrest without warrant for the violation of municipal ordinances against profanity: *State v. Freeman* 86 N. C. 683.

*Thos. R. Crisup* and *Wm. B. Jackson* for appellee.

SHERWOOD, J. This is an action of trespass for assault and battery and false imprisonment. The plaintiff was a private citizen, and the defendant, at the time of the arrest complained of, was a policeman in the city of Detroit. On the 31st of August, 1882, the defendant claims he went into a pawnbroker's shop in Detroit to assist a young man in obtaining a watch he had left in pawn there; he saw the plaintiff, who was acting as clerk for the pawnbroker, Mr. Van Baalen, at the time, and Davis ordered him out of the shop, using profane and indecent language towards him as he left. The next day, about noon, Davis found Burgess upon the street, and told him there was a gentleman at the pawnbroker's shop who wished to see him. Burgess went there in company with another officer, and while there Davis asked Burgess for his name and his number, which was given, and thereupon Davis called the defendant almost everything indecent, saying he would have his buttons off of him, etc., and would make complaint against him. Davis' language was very indecent and profane. This was while they were in the shop. Defendant did nothing but walked out of the shop and across the street, and then started for a street car. Davis followed him, continuing his profanity and abuse, calling the defendant a son of a bitch, and other mean names, and by so doing gathered a crowd around them upon the street, and then he went into his store. Defendant told him that such language should not be used upon the public street, and was

about to enter the car when Davis again came upon the street, and standing upon the sidewalk, renewed his vile and profane attack upon defendant, who was then going across the street, hailed him and again assailed him with vulgar, profane and indecent language in the presence of citizens, among whom were ladies, passing along the street. Burgess went to the plaintiff and asked him for his name, which he refused to give saying to defendant, " If you lay your hand upon me I'll shoot you," calling him at the same time a vile name. Defendant thereupon arrested the plaintiff, took him to the city attorney's office and made complaint against him under the city ordinance, which provides that "no person shall be guilty of using indecent or immoral language, nor be guilty of any indecent or immoral conduct or behavior on any public street, lane, alley, square, park or space in said city," the penalty being fine or imprisonment. The city attorney took the complaint but for some reason failed to prosecute it. Davis was discharged. This is the defendant's statement of the facts, and he claims that if found true by the jury they constitute a perfect defense to the plaintiff's action.

The defendant was sworn in his own behalf, and upon most of the material facts stated by him he was contradicted by the plaintiff, whose version of the matter presents an entirely different case; but with this we have little to do.

The court having charged the jury, in substance, that the only question for them to consider was that of damages, it is only needful for us to review the case as presented on the part of the defendant, and if, from his showing, he was not justified, the verdict must stand.

There seems to be no question that the official position of the defendant in the city of Detroit, at the time the arrest was made, constituted him a conservator of the peace. The arrest was made without warrant. At the time it was made (mid-day) the plaintiff was on the sidewalk, where citizens, men and women, were constantly passing and repassing, and there, in a loud, boisterous manner, he called the defendant a " God damned son of a bitch," and continued to use other indecent language. When defendant asked for his name he

refused to give it to the officer, and threatened to kill him if he laid his hands on him. Only a few minutes before, the plaintiff had used the same and other profane language towards the defendant in the presence of a crowd upon the street.

There is no question about the officer's right to arrest for a breach of the peace committed in his presence without process. Did the language and conduct of the plaintiff on that occasion amount to a breach of the peace? The answer to this question must necessarily determine the decision in this case. The offense, whatever its character, was committed in the presence of the officers in the public street in a city, in the presence of citizens. The language used was not only vile and profane, but forbidden under penalties both by the by-laws of the city and the statutes of our State. It was against decency and public morals, of the most aggravating character, well calculated to arouse the passions and induce personal violence which was threatened if the officer laid hands upon the offender.

Now, what is understood by "a breach of the peace?" By "peace," as used in the law in this connection, is meant the tranquillity enjoyed by the citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is "a breach of the peace." It is the offense of disturbing the public peace, or a violation of public order or public decorum. Actual personal violence is not an essential element in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens but of public morals, without the commission of the offense. The good sense and morality of the law forbid such a construction. I think the language and conduct of Davis in this case, as it appears on the record, shows him guilty of a breach of the peace, and in the act of committing it at the time he was arrested. The court should have submitted the defendant's case, as he made it, to the jury under proper instructions, to ascertain the truth of the facts as stated

by him and his witnesses.  This the court did not do, and the failure was error.

The case of *Quinn v. Heisel* 40 Mich. 576, cited by counsel for plaintiff, is not in point.  In that case the officer who was sued for making the arrest, as the plaintiff's testimony tended to show, made it after the offense had occurred, and the testimony was submitted to the jury under a proper charge, who found for the plaintiff.  Neither do I see anything in *Sarah Way's Case* 41 Mich. 299, necessarily conflicting with the views here expressed.

[It can make no difference that the officer was made the subject of the offender's wrong acts and conduct on the occasion.  Officers are entitled to the same protection as other persons.  It was the offense against the public which the people could punish, and the officer only acted for them in making the arrest.  He had no personal interest in the matter.  If the people failed to prosecute further, it was not the officer's fault; and if the plaintiff was guilty of the offense for which he was arrested, he cannot have suffered from the failure to prosecute.] I think the judgment at the circuit should be

Reversed, and a new trial granted.

COOLEY, C. J. and CHAMPLIN, J. concurred.

CAMPBELL, J.  I am not satisfied that the case was not properly presented to the jury.