ANGELIQUE GARCIA *et al.*, Plaintiffs-Appellants, v. RONALD NELSON, Defendant-Appellee.

Second District No. 2—00—0572

Opinion filed November 14, 2001.

GEIGER, J., dissenting.

James A. Campion and Philip E. Wand, both of Campion, Curran, Rausch, Gummerson & Dunlop, P.C., of Crystal Lake, for appellants.

Daniel E. Compton, of Brittain & Ketcham, P.C., of Elgin, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiffs, Angelique Garcia and Lucky Williams, filed a six-count complaint against defendant, Ronald Nelson, to recover for personal injuries and property damage they suffered when the all-terrain vehicle (ATV) they were riding collided with defendant's dog. The trial court granted defendant summary judgment (see 735 ILCS 5/2—1005(b), (c) (West 1998)) on the complaint's first three counts, which were brought under section 16 of the Animal Control Act (the Act) (510 ILCS 5/16 (West 1996)). Plaintiffs voluntarily dismissed the other three counts, which were based on common-law negligence, and defendant voluntarily dismissed a counterclaim against Williams. Plaintiffs timely appealed the grant of summary judgment on the first three counts of their complaint.

On appeal, plaintiffs argue that the grant of summary judgment was erroneous because it cannot be said as a matter of law that plaintiffs did not meet all of the Act's preconditions for recovery. We agree, reverse the judgment, and remand the cause.

On the evening of February 10, 1996, plaintiff Lucky Williams was driving his ATV east along North Boone School Road in Capron. Plaintiff Angelique Garcia was riding in back. As plaintiffs approached defendant's property at 9431 North Boone School Road, the ATV collided with defendant's dog. The crash injured plaintiffs, damaged the ATV, and killed the dog. Plaintiffs brought a three-count complaint against defendant seeking damages under the Act for, respectively, Williams' injuries, Garcia's injuries, and the damage to the ATV. The complaint alleged that the dog caused plaintiffs' injuries. The complaint also alleged that, at the time of the accident, plaintiffs were in a place where they had the right to be, were conducting themselves peacefully, and did not provoke the dog.

■ Section 16 of the Act provides:

"If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." 510 ILCS 5/16 (West 1996).

Defendant filed an answer and several affirmative defenses. Defendant alleged, *inter alia*, that plaintiffs could not recover under the Act because they had violated section 11—1426(a) of the Illinois Vehicle Code (the Vehicle Code) (625 ILCS 5/11—1426(a) (West 1996)) by driving the ATV on a public road. Defendant also filed a counterclaim against Williams for contribution in the event that Garcia recovered against defendant. Defendant subsequently moved for summary judgment. His motion alleged that there was no genuine dispute that, at the time of the accident, plaintiffs were either illegally riding the ATV on private property without the owner's permission (see 625 ILCS 5/11—1427(f) (West 1996)) or illegally riding the ATV on a public roadway. Defendant reasoned that, in either event, plaintiffs could not recover under the Act because they had not been in a "place where [they might] lawfully be" within the meaning of the Act.

Defendant attached affidavits to the motion from himself and Dennis Wilkening. Wilkening averred he owned the property across the street from defendant's land. Both affiants stated that they never permitted Williams or anyone else to ride ATVs in their fields or in the ditches alongside their fields and that nobody had permission to be on their property on February 10, 1996.

Defendant also attached plaintiffs' discovery depositions. At her deposition, Garcia testified that, on the evening of February 10, 1996, she and Williams rode Williams' ATV from his house, which was about a mile west of defendant's house on the south side of North Boone School Road. Garcia did not recall exactly where the accident took

place. However, immediately after the accident, she lay in the middle of the road and Williams lay behind her in a ditch on the south side of the road.

In his deposition, Williams testified as follows. On the evening of February 10, 1996, he drove his ATV east from his home at 8647 North Boone School Road. Garcia rode on the back of the ATV. Williams started riding along the south side of the road, crossed to the north side, then crossed back to the south side. Suddenly, the dog appeared ahead of him and to his right. The dog lunged at Williams and knocked plaintiffs off the ATV. As best Williams could recall, the collision happened just west of defendant's driveway as Williams drove his ATV "halfway in the ditch, halfway in the road."

Garcia filed a response to defendant's motion for summary judgment. Defendant filed a reply that included an affidavit from the Boone Township highway commissioner. The affidavit stated that the township has a right-of-way extending 30 feet each way from the center line of North Boone School Road and that neither the township nor the highway commission had designated any part of this right-of-way as a trail or as an ingress or egress route for ATVs.

Plaintiffs moved for partial summary judgment. Their motion asserted that there was no genuine dispute that, at the time of the accident, they were where they had a legal right to be. Plaintiffs asserted that there was no genuine dispute that the accident happened in the public right-of-way (see 605 ILCS 5/2—202 (West 1996)), which included not only the paved portion of the road but part of the grassy area alongside the pavement.

Plaintiffs attached an excerpt of defendant's deposition to their motion. In the deposition, defendant testified that on February 10, 1996, after he learned of the accident, he went outside and saw that his dog lay dead in his yard just west of his driveway and just south of the mailbox. Later that night, defendant found plastic from a headlight lens. This debris lay "right along the [south] edge of the road to maybe a foot or two in the ditch."

Plaintiffs also attached the affidavit of William Vanderstappen, a professional surveyor who surveyed the location of defendant's driveway. Vanderstappen's affidavit includes a copy of a plat drawn after the survey. The affidavit states that North Boone School Road is a paved surface about 21 feet wide; that the road's right-of-way is about 66 feet wide and includes both the paved road and the grassy areas on both sides; and that approximately 20 feet of defendant's driveway is within the road's right-of-way. On the plat, the mailbox and much of the gravel driveway are depicted north of the southern boundary of the right-of-way.

In his response to plaintiffs' motion, defendant asserted that, at the time of the accident, plaintiffs had not been where they had a legal right to be. Defendant reasoned that even if plaintiffs could prove that they had not been on defendant's property, they had no legal right to drive the ATV on the roadway. Defendant also asserted that plaintiffs could not prove that they had been conducting themselves peaceably, as they had been either trespassing or violating the traffic laws. Plaintiffs replied that, because the right-of-way was public, they had been where they had a right to be. Also, they had been acting peaceably.

Plaintiffs filed an amended complaint adding three counts based on negligence. The trial court denied plaintiffs' motion for partial summary judgment and granted defendants summary judgment on the three counts brought under the Act. The trial court reasoned as follows. There was no dispute that Williams' ATV and defendant's dog collided in the right-of-way. However, this established that plaintiffs had not been in "any place where [they] may lawfully be" (510 ILCS 5/16 (West 1996)). The trial court explained that, although violating a traffic law would not always bar recovery under the Act, plaintiffs' illegal act, driving the ATV on a public road, caused the accident and thus defeated their claims.

After the trial court denied plaintiffs' motion to reconsider, plaintiffs voluntarily dismissed the common-law counts of the complaint and defendant voluntarily dismissed his counterclaim. The trial court found that there was no just reason to delay enforcement or appeal of its order (see 155 Ill. 2d R. 304(a)). (This finding was unnecessary to confer jurisdiction on this court because the voluntary dismissal of the remaining claims rendered the grant of summary judgment a final and appealable order under Supreme Court Rule 301 (155 Ill. 2d R. 301). See *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503-04 (1997).) Plaintiffs timely appealed.

On appeal, plaintiffs argue that the summary judgment for defendant on the counts brought under the Act was based on an erroneous construction of the Act. Plaintiffs maintain that the public right-of-way was a place they could lawfully be, even though they had no right to use the ATV there. Defendant responds that plaintiffs cannot establish that they were in the right-of-way at the time of the accident and that, even if they could, they were not lawfully in the right-of-way because they were riding a banned vehicle. Defendant also argues that summary judgment was proper because plaintiffs were either trespassing or violating the Illinois Vehicle Code and, in either case, they were not "peaceably conducting [themselves]." 510 ILCS 5/16 (West 1996). For the reasons that follow, we agree with plaintiffs.

■ Summary judgment is proper when the pleadings, depositions, affidavits, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). A plaintiff need not prove her or his case at this preliminary stage but must present some evidentiary facts to support each element of her or his cause of action. *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1071 (1994). We construe the evidence liberally in favor of the nonmovant and strictly against the movant. *Sunderman v. Agarwal*, 322 Ill. App. 3d 900, 902 (2001). Our review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

■ To recover under section 16 of the Act, a plaintiff must plead and prove (1) an injury caused by an animal the defendant owned; (2) lack of provocation; (3) that the plaintiff was conducting herself or himself peaceably; and (4) that the plaintiff was in a place where she or he had the legal right to be. 510 ILCS 5/16 (West 1996); *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141, 147 (1994). Plaintiffs pleaded all of these elements. Defendant does not argue that plaintiffs failed to adduce sufficient evidence of the first two elements, causation and lack of provocation. Instead defendant argues that the trial court properly held that, because plaintiffs rode a banned vehicle on the public roadway, they could not, as a matter of law, prove the fourth element, that they were where they had the lawful right to be. Defendant also argues that because plaintiffs were admittedly breaking the law by driving the ATV where it was banned, they cannot recover under the Act because, as a matter of law, they cannot prove the third element, that they were acting peaceably.

■ Whether these arguments support the grant of summary judgment turns on an interpretation of section 16 of the Act. When interpreting a statute, we seek to ascertain and effectuate the legislature's intent. *A.P. Properties, Inc. v. Goshinsky*, 186 Ill. 2d 524, 532 (1999). Ordinarily, the statutory language itself is the best guide to this intent. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). Words that the statute does not define should receive their plain and ordinary meanings, and the dictionary is one guide to these meanings. See *In re A.P.*, 179 Ill. 2d 184, 198-99 (1997). If the statute's language is unambiguous, we must follow it. *People v. Eidel*, 319 Ill. App. 3d 496, 502 (2001). We consider the language of the statute in light of the statute's purposes and the evils the law was designed to remedy. *DeWig v. Landshire, Inc.*, 281 Ill. App. 3d 138, 142 (1996). We presume that the legislature did not intend inconvenience, injustice, or absurdity and will favor an interpretation that renders the law reasonable and sensible over one that renders the law illogical and absurd. *People v. Stanciel*, 153 Ill. 2d 218, 233-34 (1992).

■ Applying these principles here, we inquire first whether the trial court correctly held that, as a matter of law, plaintiffs were not "in any place where [they might] lawfully be." 510 ILCS 5/16 (West 1996). Defendant presents two arguments in favor of this conclusion. The first is that plaintiffs cannot establish that, when they were injured, they were not trespassing on private property. We disagree. Construing the evidence liberally in plaintiffs' favor, we think that plaintiffs' occurrence testimony, defendant's testimony about the crash scene, the township highway supervisor's description of the right-of-way, and the surveyor's affidavit and plat are more than enough evidence from which to find that plaintiffs were in the public right-of-way when the ATV collided with defendant's dog. We agree with the trial court that there is no genuine dispute that plaintiffs were within the right-of-way, which, according to a fair reading of the plat, extends far south of where the collision occurred.

Defendant's second argument is that the trial court correctly held that plaintiffs were not *lawfully* on the right-of-way because they could not legally ride the ATV on North Boone School Road. Defendant asserts that, because plaintiffs lacked the law's permission to ride the ATV on the roadway, they are no more entitled to recover than had they been injured while trespassing on private property. Plaintiffs contend that they need only prove that they were in a place in which they had a right to be and that they had the legal right to be on the public right-of-way, although they concede that they had no legal right to ride an ATV there. We agree with plaintiffs.

As pertinent here, section 16 requires only that a plaintiff plead and prove that he was in "*any place* where he may lawfully be." (Emphasis added.) 510 ILCS 5/16 (West 1996). We think this language plainly refers only to where a plaintiff is physically located at the time of the injury and whether the law allows her or him to be there—not to what she or he is doing there, how she or he arrived there, or whether she or he is violating the law while she or he is in that location. We hold that the quoted language unambiguously requires only that a plaintiff not be trespassing on real property. In this case, plaintiffs had the right to be present on the public right-of-way, even if they had no legal right to use the ATV while they were there.

Even were we to consider the controverted language ambiguous, we would not construe it to bar recovery by people such as plaintiffs in this case. Although in general the Act is to be strictly construed in favor of the animal owner (*Harris v. Walker*, 119 Ill. 2d 542, 547 (1988)), our ultimate goal is still to effectuate the legislature's intent. For several reasons, we think the legislature intended to allow one who is injured by a dog in a public place to recover, regardless of whether she is riding a banned vehicle there.

First, the basic purpose of the Act does not support treating a plaintiff who is in a public place less favorably merely because he is violating a law of whatever sort. The Act was passed to protect the public by encouraging tight control of animals. *Meyer*, 262 Ill. App. 3d at 148. The Act does this by dispensing with the common-law rule that an owner is not liable for injuries his dog inflicts unless he has notice of the dog's vicious propensities. *Harris*, 119 Ill. 2d at 547. Nonetheless, the Act does not make an animal owner strictly liable to all potential plaintiffs but protects only "innocent bystanders" who, by virtue of their relationship (or lack of one) to the animal, have no reason to know or avoid the risk that the animal poses to them. *Harris*, 119 Ill. 2d at 547; *Meyer*, 262 Ill. App. 3d at 148.

A plaintiff who invites the risk that the animal will injure him, or one who explicitly assumes that risk, is not an "innocent bystander" and may not recover under the Act. Thus, the Act does not aid a person who suffers injuries from falling off a rented horse if the person has signed a release of liability (*Harris*, 119 Ill. 2d at 547) or if she is injured only because the horse acts naturally as should be anticipated (*Ennen v. White*, 232 Ill. App. 3d 1061, 1064-65 (1992)). Similarly, the Act denies recovery to one who provokes the animal (510 ILCS 5/16 (West 1996)).

In harmony with the "innocent bystander" theme, the Act also denies recovery to one who trespasses on the animal owner's property. See *Dobrin v. Stebbins*, 122 Ill. App. 2d 387, 389 (1970). A trespasser ordinarily invites the risk of injury because she or he should know that private parties often keep dogs on their property, sometimes for the very purpose of discouraging trespassers. Also, a trespasser on private property should realize not only that she or he is infringing the rights of the owner but also that "the [owner's] dog, with his characteristic loyalty, would instinctively defend and protect" (*Dorman v. Carlson,* 106 Conn. 200, 203, 137 A. 749, 750 (1927)) the owner's person or property.

These considerations do not support denying relief to one who was violating the traffic laws but not infringing on any rights of the animal or its owner when the injury occurred. Here, although plaintiffs were not innocent of violating the Illinois Vehicle Code, they were innocent bystanders (or by-riders) *vis-a-vis* defendant and defendant's dog. Plaintiffs were on a public right-of-way, where people could go freely without obtaining defendant's permission. Had plaintiffs been riding a permitted vehicle, defendant could not argue that they were not lawfully there.

We do not believe that the mere fact that plaintiffs were driving a banned vehicle provides any basis for a fact finder to conclude that

plaintiffs were not in a *place* they could lawfully be. From defendant's viewpoint, that plaintiffs were riding an ATV rather than a permitted vehicle is a sheer fortuity. Driving an ATV on the public right-of-way need not infringe on an animal owner's rights any more than, for example, driving a large sport utility vehicle there. Also, while most people realize that dogs are ordinarily loyal to their masters and jealous of their own territory, drivers cannot assume that the average dog will instinctively defend the general welfare against anyone who flouts the traffic laws. Dogs often chase cars and other vehicles, but these dogs seldom, if ever, discriminate between vehicles that comply with the Vehicle Code and those that do not.

As this discussion suggests, we believe that accepting the trial court's interpretation of the Act would not only fail to serve the Act's purpose but would also invite absurd or unjust results. We do not think the legislature intended to free a dog owner of her or his duty to control his dog just because the dog's victims happened to have been violating a law. To grant such license would effectively turn domestic dogs into canine police officers who are free to "take a bite out of crime" and, indeed, a bite out of the offenders themselves. That would be both unnecessary and unjust. The State can enforce the traffic laws against people such as plaintiffs without excusing those such as defendant from their normal duty to control their dogs in the interest of public safety.

The trial court erred in concluding that, as a matter of law, plaintiffs were not in a place where they could lawfully be when defendant's dog caused their injuries. Thus, summary judgment cannot be sustained on this ground. We proceed to defendant's second argument in support of the judgment: that, as a matter of law, plaintiffs were not "peaceably conducting [themselves]" (510 ILCS 5/16 (West 1996)) at the time of the accident because they were breaking the law by operating a banned vehicle on the public roadway. Defendant appears to argue that this illegal act, and perhaps any illegal act, is sufficient to refute a claim of peaceable conduct. We disagree.

■ The Act does not define "peaceably conducting" oneself. However, we see several compelling reasons to reject defendant's apparent assertion that lawbreaking is *per se* not "peaceable." First, giving the words at issue their ordinary meanings, we cannot say that illegal conduct is never "peaceable." Dictionaries define "peaceable" as "quietly behaved" or "marked by freedom from strife or disorder" (Webster's Collegiate Dictionary 852 (10th ed. 1996)) and peace as a state of "public tranquility; freedom from civil disturbance or hostility" (Black's Law Dictionary 1151 (7th ed. 1999)). These definitions accord with (or reflect) long-standing judicial definitions of the "public

peace" as the general tranquility and good order (see, *e.g.*, *Davis v. Burgess*, 54 Mich. 514, 517, 20 N.W. 540, 542 (1884); *State v. Woodworth*, 234 N.W.2d 243, 247 (N.D. 1975)) and a "breach of the peace" as "conduct that invites or is likely to invite immediate public turbulence, or that leads to or is likely to lead to an immediate loss of public order and tranquility." *Valentino v. Glendale Nissan, Inc.*, 317 Ill. App. 3d 524, 532 (2000); see also *Woodworth*, 234 N.W.2d at 247.

Because not every unlawful act tends to cause turbulence or public disorder, one may violate the law while still acting peaceably. See *State v. Cooper*, 563 S.W.2d 784, 787 (Mo. App. 1978) (defendant who carried concealed gun was traveling "peaceably" although he may have been driving while intoxicated); *City of Corvallis v. Carlile*, 10 Or. 139, 143 (1882) (operating store on Sunday offended "public policy" but not "public peace"). Thus, in ordinary parlance, Williams' driving the ATV on the public road was illegal but not necessarily "unpeaceable."

Second, as is true with the "lawful place" element, defining "peaceable" conduct narrowly would not serve the purposes of the Act and could lead to absurd or unjust results. The legislature might well wish to deny aid to one who disturbs the public peace, as he ought to realize that his conduct might arouse the fighting instincts of a nearby animal. However, denying relief to anyone who violates *any* law would not sensibly distinguish between "innocent bystanders" and those who invite or assume the risk of injury from the animal. Instead, an indiscriminate policy of denying recovery where there is any illegality would convert watchdogs who guard their owners' persons and property into deputy dogs who may enforce all manner of laws with no relation to the welfare of animals or animal owners. The Act could not have been meant to penalize attack victims for acts unrelated to their injuries or to give animal owners such a windfall.

We have found no Illinois cases that address the specific questions of statutory construction presented here. However, the history of the Connecticut "dog bite" statute serves as a guide to interpreting our law. In *Kelley v. Killourey*, 81 Conn. 320, 70 A. 1031 (1908), the court affirmed the denial of recovery where the jury found that the victim provoked the attack by maltreating the dog. Although the statute appeared to impose absolute liability, the court held that the jury had been properly instructed to deny recovery if the victim had caused his own injuries by committing a "wrongful or willful and unlawful act." *Kelley*, 81 Conn. at 323, 70 A. at 1032. The court stressed that the instruction was proper because the only wrongful or unlawful conduct to which it could have referred was the victim's abuse of the dog, actions the victim should have known would rouse the dog to defend

himself with force. Thus, there was no danger that the jury had improperly denied the plaintiff recovery merely because the victim had performed *a* wrongful act. *Kelley*, 81 Conn. at 324, 70 A. at 1031-32.

After *Kelley*, the Connecticut legislature amended the statute to deny recovery where, at the time the injury was occasioned, the victim "was committing a trespass or other tort." Conn. Gen. Stat. § 3404 (1918), quoted in *Dorman v. Carlson*, 106 Conn. 200, 203, 137 A. 749, 749 (1927). In *Dorman*, the court declined to apply the quoted language literally to bar recovery whenever the victim committed any trespass or tort. Rather, the court limited the exemption to trespasses or torts "upon the person or property of the owner or keeper, or of his family, and other torts of like character, and which the dog, with his characteristic loyalty, would instinctively defend and protect, and those torts committed upon the dog to which we referred in *Kelley v. Killourey* as likely to excite a dog to the use of its natural weapons of defense." *Dorman*, 106 Conn. at 203, 137 A. at 750; see also *Hanson v. Carroll*, 133 Conn. 505, 52 A.2d 700 (1947) (holding that entry onto another's land is not conclusive of trespass and may be justified); *Koller v. Duggan*, 346 Mass. 270, 272-73, 191 N.E.2d 475, 478 (1963) (Massachusetts' statute's exemption for "trespass" referred to trespass to owner's land, not merely patting dog, even if this were to be considered technical trespass). We think the reasoning of these opinions is sound, as they recognize that it would be unjust to deny compensation to the victim of an animal attack merely because the victim was committing a technical trespass or minor statutory violation. Here, we may read the same principle into the Act without disregarding the Act's literal meaning. We conclude that whether a plaintiff is acting peaceably is a factual matter that cannot be resolved merely by finding that the plaintiff violated the Vehicle Code.

■ We wish to emphasize that because this case reaches us following a grant of summary judgment, we have addressed only the narrow issue of whether plaintiffs' violation of the Vehicle Code barred recovery and have not addressed the merits of this case. We express no opinion on whether plaintiffs will ultimately be able to prove the remaining elements of this cause of action—causation and lack of provocation. Whether plaintiffs' use of an ATV in violation of the Vehicle Code was the cause of the accident or whether such use constituted a provocation is a factual issue that must be resolved at trial.

In sum, we hold that defendant did not establish as a matter of law that plaintiffs cannot recover under section 16 of the Act. Therefore, the grant of summary judgment on the three counts brought under the Act was improper, and we must reverse the judg-

ment and remand the cause for a trial on the merits of plaintiffs' complaint.

The judgment of the circuit court of Boone County is reversed, and the cause is remanded.

Reversed and remanded.

RAPP, J., concurs.

JUSTICE GEIGER, dissenting:

I respectfully dissent. The evidence appearing in the record plainly demonstrates that, at the time of the accident, the plaintiffs were not in a place where they had a lawful right to be. Even assuming that the accident occurred in the public right-of-way, there is no question that the plaintiffs were utilizing the right-of-way in an illegal manner. Section 11—1426(a) of the Illinois Vehicle Code provides that it is "unlawful for any person to drive or operate any all-terrain vehicle or off-highway motorcycle upon any street, highway or roadway in this State." 625 ILCS 5/11—1426(a) (West 1996). As it was unlawful for the plaintiffs to be upon the public right-of-way while operating an ATV, I do not believe that the plaintiffs were in a place they could lawfully be for purposes of the Animal Control Act. 510 ILCS 5/16 (West 1996).

The majority attempts to circumvent this conclusion by explaining that, although the plaintiffs were violating a traffic law at the time of the accident, they were nonetheless upon a public way and therefore were in a place they could lawfully be. Such a conclusion is not supported by authority. The use of public ways is not unlimited and may be regulated by the General Assembly. See *People v. Warren*, 11 Ill. 2d 420, 424-25 (1957). Here, the legislature has chosen to impose a specific limitation upon the use of public ways by prohibiting the operation of ATVs. There is no dispute that the plaintiffs' use of the public way in question was not in conformity with this requirement. I therefore fail to understand how their presence on the public right-of-way could be considered lawful.

Rather, I believe that the undisputed evidence establishes that the plaintiffs were not in a place where they had a lawful right to be and that they cannot recover under the Animal Control Act. I would therefore affirm the order of the circuit court granting summary judgment.