No. 3--05--0277

filed June 13, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit Hancock County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| STANLEY L. TUCKER, as Trustee under the provisions of Paragraph SEVEN of the Last Will of Leo Harrison, deceased, and LARRY POST, | ) ) ) ) ) ) | No. 01--ED--7 Honorable David F. Stoverink |
| Defendants-Appellants. | ) | Judge, Presiding |

JUSTICE HOLDRIDGE delivered the Opinion of the court:

The Illinois Department of Transportation (IDOT) filed a condemnation complaint regarding property over which Tucker was trustee. IDOT also moved for immediate vesting of title under the "Quick-take" statute (735 ILCS 5/7--103 (West 2000)). Tucker then filed a traverse, alleging that IDOT had failed to negotiate in good faith as required by law. The basis of his allegation was IDOT's refusal, during the negotiation stage, to disclose the report from its appraisal of the property. The circuit court denied Tucker's traverse and subsequently vested title in IDOT pursuant to the preliminary just compensation rules applicable in quick-take

proceedings (see 735 ILCS 5/7--104, 7--105 (West 2000)).  Tucker eventually filed this appeal challenging the circuit court's denial of his traverse.  We affirm.

BACKGROUND

The property in question is approximately three quarters of an acre in a 160-acre tract of farmland belonging to the Leo A. Harrison Trust.  Tucker, an attorney, is the trustee.  The property was already dedicated for state highway use before these condemnation proceedings.  Through the proceedings IDOT sought title to the property for purposes of expanding Highway 136.  IDOT also sought part of Tucker's access rights to the existing roadway because its improvement plans entailed a limited access four-lane highway.

Section 7--102.1(d)(1) of the Code of Civil Procedure (Code) requires:

"At least 60 days before filing a [condemnation] petition ***, a State agency shall send a letter by certified mail, return receipt requested, to the owner of the property to be taken, giving the property owner the following information: The amount of compensation for the taking of the property proposed by the agency, and the basis for computing it."  735 ILCS 5/7--102.1(d)(1) (West 2000).

Pursuant to this requirement, in September of 2000 IDOT sent Tucker correspondence entitled "BASIS FOR COMPUTING TOTAL APPROVED COMPENSATION AND OFFER TO PURCHASE."  In October of 2000 Tucker responded by requesting a copy of the report from IDOT's appraisal of the land, stating that he needed the appraiser's information to conduct good faith negotiation.  IDOT declined this request.  Tucker

2

accused the agency of violating its duty to negotiate in good faith and advised, "we [thus] cannot respond to your offer."

IDOT then filed a petition for condemnation along with a quick-take motion. Tucker responded by filing a traverse, asserting that IDOT violated its legal duty to negotiate in good faith before exercising eminent domain power. As part of the ensuing discovery proceedings, IDOT produced a copy of its appraisal report.

Pursuant to statute, the circuit court could not transfer title to IDOT in the quick-take proceedings without first determining that: IDOT had authority to exercise the right of eminent domain; the property in question was subject to that right; and IDOT was properly exercising its eminent domain power. 735 ILCS 5/7--104(b) (West 2000). The court was also required to "make a preliminary finding of the amount constituting just compensation." 735 ILCS 5/7--104(c) (West 2000). IDOT's appraiser suggested $11,800 as preliminary just compensation, while Tucker's appraiser suggested $56,753. The parties entered into a stipulation whereby Tucker acknowledged that "[p]laintiff has authority to exercise eminent domain," and IDOT agreed to the amount of just compensation suggested by Tucker's appraiser.

On May 30, 2001, the circuit court entered an "ORDER DENYING DEFENDANT'S TRAVERSE AND MOTION TO DISMISS." The crux of the order reads:

"The Court further finds that there has not been a failure of the Plaintiff to negotiate in good faith as required by law, and pursuant to 735 ILCS 5/104(b) finds that the plaintiff has authority to exercise the right of eminent domain, that the property sought to be taken is subject to the exercise of such right, that such right is not being improperly exercised in

3

this proceeding and that reasonable necessity exists for taking the
property in the manner requested in Plaintiff's motion."

Two things were combined in this order: a denial of Tucker's traverse, and the circuit court's prerequisite findings for a quick-take. The order ended by declaring that, on good cause shown, Tucker's time for appeal was extended to 30 days after final judgment on IDOT's condemnation complaint.

Also on May 30, 2001, the court entered an order setting preliminary just compensation at $56,753 ($2,235 for the land taken, and $54,518 for damage to the remainder). IDOT deposited that amount with the county treasurer (see 735 ILCS 5/7--105 (West 2000)), and on June 28, 2001, the circuit court entered an order vesting IDOT with title to the property. Tucker subsequently withdrew the money. See 735 ILCS 5/7--106 (West 2000) (allowing a defendant to withdraw preliminary just compensation on condition that he refund any amount exceeding the sum finally determined as just compensation).

Proceedings then continued on the condemnation complaint. IDOT had the property reappraised by new appraiser and gave Tucker a copy of the report. Tucker deposed the new appraiser in May of 2003.

At this time, IDOT was pursuing a separate condemnation complaint against a landowner named Hunziker. As had Tucker, Hunziker requested copies of IDOT's appraisal reports during the negotiation stage. IDOT denied the request, and Hunziker's case followed the same procedural path as the instant case--including a denial of traverse. Hunziker appealed, and a panel of this court reversed the denial of traverse, holding that IDOT could not initiate condemnation proceedings without first giving the

4

landowner copies of reports from any appraisals of the land.  Department of Transportation ex rel. People v. Hunziker, 342 Ill. App. 3d 588 (2003).  This holding rested on the phrase "and the basis for computing it" in section 7--102.1(d)(1) of the Code.  Justice Lytton filed a dissenting opinion.

IDOT petitioned for rehearing asking the Hunziker panel to declare that its opinion applied only prospectively.  In a supplemental opinion, the panel announced:

"Our ruling *** was an issue of first impression whose resolution was not clearly foreshadowed.  The rule's purpose of encouraging voluntary acquisitions of property and discouraging litigation will be promoted by prospective application.  Those cases already in litigation cannot benefit from the rule, and applying it retroactively to other cases would only promote litigation and defeat the rule's purpose.

Accordingly, we hold that the requirement to supply an appraisal where one has been performed applies only to those eminent domain proceedings commencing after the date of our decision in this case."

Hunziker, 342 Ill. App. 3d at 602.

The supplemental opinion was issued on September 10, 2003.

In the instant case, a trial on IDOT's complaint was finally scheduled for April of 2005.  However, at a pre-trial conference in March of 2005, Tucker advised that he wanted to appeal the denial of his traverse.  The matter did not proceed to trial because he filed the instant appeal on April 18, 2005.

It is noteworthy that IDOT has already improved the property in question.

ANALYSIS

Tucker argues that <u>Hunziker</u> should be applied retroactively so as to warrant reversal of the circuit court's order denying his traverse. IDOT argues, <u>inter alia</u>, that <u>Hunziker</u> should not be applied retroactively, and that we should revisit the <u>Hunziker</u> opinion. Having revisited <u>Hunziker</u>, we believe it was wrongly decided.

The language at issue is codified in section 7--102.1(d)(1) of the Code, which reads:

> "At least 60 days before filing a [condemnation] petition ***, a State agency shall send <u>a letter</u> by certified mail, return receipt requested, to the owner of the property to be taken, giving the property owner the following information: The amount of compensation for the taking of the property proposed by the agency, and <u>the basis for computing it</u>." (Emphasis added.) 735 ILCS 5/7--102.1(d)(1) (West 2000).

Does this language require IDOT to furnish Tucker with a copy of the report from its appraisal of the land? We think not.

Statutory construction raises a question of law that we review <u>de</u> <u>novo</u>. <u>Carver v. Sheriff of La Salle County</u>, 203 Ill. 2d 497 (2003). Our role is to ascertain and effectuate the legislature's intent (<u>Carver</u>, 203 Ill. 2d 497), and our primary guide is the statutory language itself (<u>Garcia v. Nelson</u>, 326 Ill. App. 3d 33 (2001)). If the language is unambiguous, it must be applied as written. <u>Garcia</u>, 326 Ill. App.3d 33. We may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. <u>Barnett v. Zion Park District</u>, 171 Ill. 2d 378 (1996).

6

In the instant case, it is clear that the legislature only required the condemning agency to send the landowner a letter. The plain language of section 7--102.1(d)(1) says so. We may not depart from that language by imposing an additional requirement that the agency also send a copy of its appraisal report. Neither is this conclusion changed by the fact that the letter must give "the basis for computing" the agency's offer. First, this additional element does not transform the nature of the required mailing (a mere letter). Second, the word "basis" simply does not mean "appraisal." They are two separate words, and the legislature only used the former.

As Justice Lytton aptly observed in his <u>Hunziker</u> dissent, section 4651 of the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 is quite instructive. That statute reads: "The head of the Federal agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation. 42 U.S.C. §4561(3) (2000). In <u>Wise v. United States</u>, 369 F. Supp 30 (W.D. Ky. 1973), the court held that this language did not require the condemning agency to provide a copy of its full appraisal report. Instead the agency was only required to provide a written statement of the basis for its offer, and a summary of that basis. The "written statement" language correlates with Illinois' requirement that a letter be sent.

California provides another illustration. In that state, the legislature has required a condemning entity to provide the property owner with "a written statement of, and summary of the basis for, the amount it established as just compensation." Cal. Gov. Code § 7267.2(b) (West 2000). Then the next paragraph of the statute reads: "Where

7

the property involved is owner occupied residential property and contains no more than four residential units, the homeowner shall, upon request, be allowed to review a copy of the appraisal upon which the offer is based." Cal. Gov. Code § 7267.2(c) (West 2000). The legislature appropriately recognized a distinction between the "basis" of an offer and an "appraisal" of the property in question.

The plain language of the Illinois statute only requires a condemning agency to provide information that would ordinarily be contained in a letter conveying an offer. Examples of such information may include the date of valuation, the total amount proposed as just compensation, the amount to be paid for any temporary easements, the amount to be paid for damage to the landowner's remaining property, and the highest and best use in light of applicable zoning regulations. Such information does not, however, include the full appraisal report--which is an entirely separate document. Had the legislature intended IDOT to provide that report, it could have easily so stated. Yet it did not. C.f., Fla. Stat. Ann § 73.015(1) (West 2004) (explicitly using the word "appraisal"); Idaho Code § 7--711A (2004) (same); Tex. Prop. Code Ann. § 21.0111(a) (West 2004) (same); Wis. Stat. Ann. § 32.05(2)(b) (West 2004) (same); N. M. Stat. Ann. 42A--1--4(B) (Michie 2004) ("appraisals").

We appreciate the concerns raised by the Hunziker majority. However, such matters do not provide license to depart from plain statutory language. We also note that an agency cannot conceal its appraisal report for purposes of low balling the landowner, since doing so would breach the statutory obligation of good faith negotiation. See City of Naperville v. Old Second National Bank of Aurora, 327 Ill. App. 3d 734 (2002).

CONCLUSION

Based on our decision that section 7--102.1(d)(1) of the Code did not require IDOT to furnish a copy of its appraisal report, we conclude that the circuit court did not err in denying Tucker's traverse. Accordingly, we affirm the circuit court's judgment.

Affirmed.

SCHMIDT, P. J., concurs and MCDADE, J., specially concurs.


JUSTICE McDADE, specially concurring:

---

The majority has affirmed the decision of the Circuit Court of Hancock County denying defendant traverse. I believe this was the correct decision and, therefore, concur.

As acknowledged by the majority, *Department of Transportation ex. rel. v Hunziker,* 342 Ill. App. 3d 588 (2003), includes an express instruction that it should not be applied retroactively. Because the present case was already pending when *Hunziker* was decided, the trial court's order is consistent with that decision and is correctly affirmed on that basis.

I write separately because, in a purely gratuitous discussion, the majority has also concluded that *Hunziker* was wrongly decided. Eminent domain proceedings allow the State to take private property from an unwilling seller, but only for fair compensation. Because of the over-bearing nature of the transaction, the State is not entitled to the

9

same right to hold its cards close to its vest as is given to participants in an arms' length real estate transaction.  Accordingly, the legislature has required that the "basis" for the State's offer should be disclosed to the seller.  If an appraisal is part of that basis, it too should be disclosed.  Accordingly, I do not agree with the majority's evaluation of *Hunziker.*