Nos. 2--06--0197 & 2--06--0243 cons.      Filed:  7-18-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| GALENA GAZETTE PUBLICATIONS, INC., JOURNAL STANDARD, INC., and TELEGRAPH HERALD, a Division of Woodward Communications, Inc., | ) ) ) ) | Appeal from the Circuit Court of Jo Daviess County. |
| | ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 05--CH--15 |
| | ) | |
| THE COUNTY OF JO DAVIESS, a/k/a The Jo Daviess County Board and The Jo Daviess Planning and Development Committee, MERRI BERLAGE, as Chairperson of the Jo Daviess County Board, and THE GALENA CITY COUNCIL, | ) ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | William A. Kelly, |
| Defendants-Appellants. | ) | Judge, Presiding |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

This is a suit under the Open Meetings Act (Act) (5 ILCS 120/1 et seq. (West 2004)). Defendants, the County of Jo Daviess (County), also known as the Jo Daviess County Board (County Board) and the Jo Daviess Planning and Development Committee (PDC); Merri Berlage, as chairperson of the County Board; and the Galena City Council (City Council), appeal an order granting the motion of plaintiffs, Galena Gazette Publications, Inc.; Journal Standard, Inc.; and Telegraph Herald, a division of Woodward Communications, Inc., for summary judgment (see 735 ILCS 5/2--1005(c) (West 2004)), denying defendants' motion for summary judgment, and requiring

defendants to disclose minutes and tapes of meetings that plaintiffs claimed were illegally closed to the public. We reverse and enter summary judgment for defendants.

The meetings at issue pertained to the use of part of the "Old Train Depot," which the City of Galena (City) owns. A "Use Agreement" (lease) signed by the City and the Galena Area Chamber of Commerce (Chamber), dated March 24, 2005, recites that the lease is in effect from May 1, 2005, until April 30, 2008; that it gives the Chamber the exclusive possession of the Old Train Depot; and that, during the lease term, the County's Convention & Visitors Bureau (CVB) will be subletting from the Chamber a portion of the premises. A draft "Letter of Understanding" (draft Letter) between the Chamber and the CVB, dated April 1, 2005, states that the sublease term will be from May 1, 2005, until April 30, 2006, and that the CVB will be allowed to occupy certain ground-level areas of the building. The draft Letter divides the authority over the racking of brochures and the display of various tourism-related materials. A handwritten notation reads, "Initial proposal discussed at meeting." Another "Letter of Understanding" (final Letter), dated May 12, 2005, sets forth the agreed-upon conditions of the sublease and states that the CVB "shall allow a carousel rack for Chamber member information to be displayed in the north room of the Depot."

As amended, plaintiffs' complaint alleges as follows. The County, the County Board, the PDC, and the City Council are all public bodies as defined by the Act (see 5 ILCS 120/1.02 (West 2004)). Therefore, subject to the narrow exceptions in section 2(c) of the Act (5 ILCS 120/2(c) (West 2004)), their meetings must be open to the public (see 5 ILCS 120/2(a) (West 2004)). However, on April 7, 2005, at a special meeting of the PDC, the PDC and the City Council held a closed "executive session" at which matters not within the Act's exemptions were discussed. These matters included details of a prospective arrangement for racking informational brochures at the Old

Train Depot. On April 11, 2005, the County Board and Berlage violated the Act by convening a closed "executive session" at which the participants again discussed the details of the arrangement for racking informational brochures. Plaintiff Galena Gazette Publications, Inc., asked the County Board to provide tapes of the two closed meetings, but the County Board refused. Plaintiffs asked the trial court to order defendants to make public the tapes and minutes of those parts of the closed meetings that were not exempt from disclosure and to enjoin defendants permanently from further violating the Act.

Defendants' answer admitted that the County, the County Board, the PDC, and the City Council were public bodies but denied that they had violated the Act. Plaintiffs moved for summary judgment. They relied on section 2 of the Act, which, as pertinent here, provides:

> "(a) Openness required. All meetings of public bodies shall be open to the public unless excepted in subsection (c) and closed in accordance with Section 2a [5 ILCS 120/2a (West 2004)].
>
> (b) Construction of exceptions. The exceptions contained in subsection (c) are in derogation of the requirement that public bodies meet in the open, and therefore, the exceptions are to be strictly construed, extending only to subjects clearly within their scope. The exceptions authorize but do not require the holding of a closed meeting to discuss a subject included within an enumerated exemption.
>
> (c) Exceptions. A public body may hold closed meetings to consider the following subjects:
>
> * * *
>
> (5) The purchase or lease of real property for the use of the public body,

including meetings held for the purpose of discussing whether a particular parcel should be acquired.

(6) The setting of a price for sale or lease of property owned by the public body." 5 ILCS 120/2(a) through (c) (West 2004).

Plaintiffs' motion alleged as follows. A "meeting" is "any gathering of a majority of a quorum of the members of a public body held for the purpose of discussing public business." 5 ILCS 120/1.02 (West 2004). The "executive session" of April 7, 2005, was a meeting of the City Council, the County Board, and the PDC, as it was attended by a majority of a quorum of each public body. In answering plaintiffs' interrogatories, the County Board, Berlage, and the City Council essentially admitted that public business, including the racking of promotional materials at the Old Train Depot, had been discussed at the closed meeting. Also, the "executive session" of April 11, 2005, was a "meeting" of the County Board, and public business, including the racking of promotional materials at the Old Train Depot, had been discussed there.

Plaintiffs' motion attached Berlage's answers to plaintiffs' interrogatories. In one answer, Berlage stated that, at the April 7, 2005, closed session, "the members of the [PDC] and other County Board members discussed the 'Letter of Understanding' regarding the sublease of space [at the Old Train Depot]. The discussion included issues in dispute regarding racking, payment of next amount of space [sic] to be used, length of contract, and other legal issues involving the sublease." In another answer, Berlage stated that, at the April 11, 2005, closed session, County Board members again discussed the draft Letter and that the discussion covered "issues in dispute including racking, payment of rent, amount of space to be used, and alternative locations for the CVB to relocate [sic]."

Plaintiffs argued that neither section 2(c)(5) nor section 2(c)(6) of the Act exempted the discussions at issue from the Act's general requirement of openness. According to plaintiffs, section 2(c)(5) applied only to the discussion of the leasing or subleasing of the Old Train Depot (or part of it), and section 2(c)(6) protected only the discussion of the price of a proposed lease or sublease. Therefore, the public could not legally be excluded from the discussion of the "day-to-day operations at the Train Depot, including the racking of promotional materials of third parties."

The County and Berlage responded to plaintiffs' motion. They contended that the discussions at the closed sessions were protected by section 2(c)(5) of the Act because they dealt entirely with "the lease or sublease of real property" and not with the "day-to-day operations at the Train Depot." The County and Berlage also moved for summary judgment, contending that, because the two closed sessions were devoted to disputed issues surrounding the potential sublease, they were exempt under section 2(c)(5) of the Act. The City Council also moved for summary judgment, contending that the April 7, 2005, closed meeting included discussions of the specific terms and conditions of the sublease and that both sessions were exempt under the Act.

Also before the trial court were the draft minutes of the two closed sessions. For obvious reasons, we shall not summarize these reports in detail, and we shall defer describing their content until the discussion of the issues on appeal. We note that, although plaintiffs' complaint requested the release of the tapes of the two closed sessions, no tapes are in the record on appeal and it does not appear from the record that any tapes were presented to the trial court.

The trial court granted plaintiffs' motion for summary judgment, holding that the two meetings' discussions that related to the racking of promotional brochures at the Old Train Depot were not exempt. Defendants timely appealed. On appeal, defendants contend that summary

judgment is proper for them, not for plaintiffs, because the records that plaintiffs seek relate entirely to matters that were exempt under section 2(c) of the Act.

Summary judgment is proper when the pleadings, depositions, and other matters of record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 2002); Russell v. Village of Lake Villa, 335 Ill. App. 3d 990, 993 (2002). Our review is de novo. Russell, 335 Ill. App. 3d at 993. This case turns on the meaning of a statute, a question of law, which we also review de novo. See In re Estate of Dierkes, 191 Ill. 2d 326, 330 (2000). Our goal is to ascertain the legislature's intent. Garcia v. Nelson, 326 Ill. App. 3d 33, 38 (2001). Ordinarily, the language of the statute is the best guide to what the legislature intended, and, if the language is unambiguous, we must follow it without resorting to aids to statutory construction. People v. Perry, 224 Ill. 2d 312, 323 (2007); Garcia, 326 Ill. App. 3d at 38. Although the Act states that its exemptions are to be strictly construed (5 ILCS 5/120(b) (West 2004)), the rule of strict construction does not come into play if the language at issue is unambiguous (Perry, 224 Ill. 2d at 323), and, in any event, a strict construction must still be a reasonable one (see TTX Co. v. Whitley, 313 Ill. App. 3d 536, 543 (2000)).

Section 2(c)(5) of the Act allows a public body to hold closed meetings in order to consider "[t]he purchase or lease of real property for the use of the public body, including meetings held for the purpose of discussing whether a particular parcel should be acquired." 5 ILCS 120/2(c)(5) (West 2004). As the parties agree, the County is a public body, and there is no dispute that the closed meetings of April 7, 2005, and April 11, 2005, at which the County was present by its representatives on the County Board and the PDC, were held at least in part to consider the lease (the proposed sublease, as described tentatively by the draft Letter) of real property (part of the Old Train Depot)

for the use of the public body (the CVB, a division of the County, which planned to use the leased space by providing information and services for visitors). Thus, the meetings were dedicated at least in large measure to the consideration of subjects that were within the plain meaning of section 2(c)(5) of the Act. The question is whether the meetings were held to consider as well subjects that were not within any exemptions. If that were the case, then the meetings exceeded the scope of section 2(c) of the Act and, to the extent that they did so, disclosure is now required.

Without disclosing the specific contents of these closed meetings or the positions that officials took on the issues raised, we discreetly make the following generalizations from the minutes that the trial court considered. Most of what was said at the first meeting, and all of what was said at the second meeting, was straightforwardly directed toward whether and on what terms the CVB ought to sublet property from the Chamber, as proposed by the draft Letter. The minutes of the April 7, 2005, meeting begin by recording one participant's statement that "there are issues with the [draft Letter], including racking, payment of rent, length of contract, and legal issues." The remainder of the lengthy report summarizes the discussions of these sublease-related issues, including how much rent the CVB would pay; how much space the CVB would occupy; how entering into the proposed sublease would affect the racking of promotional brochures of various businesses; and how, once the CVB moved into the Old Train Depot in accordance with the sublease, the CVB and the Chamber would divide the control over the racking of promotional literature there. The participants also discussed whether it was desirable to enter into the arrangement at all, what alternatives existed, and how the CVB and the Chamber could arrive at an agreement of some sort.

Similarly, the April 11, 2005, closed meeting centered on the discussion of the CVB's proposed subleasing of space at the Old Train Depot. The participants discussed whether the

Chamber would completely control the racking of promotional brochures in the building; what rent the Chamber might charge and how the proposed subleasing arrangement might give the Chamber undue power over the CVB and its budget; whether the CVB has alternatives to the Old Train Depot; and whether the County should accept the draft Letter or consider other arrangements.

We conclude that the closed meetings were wholly dedicated to the discussion of the lease of the Old Train Depot for the use of the County. Even when participants discussed the racking of promotional brochures at the Old Train Depot--past, present, or future--they did so only because it was pertinent to the terms, effects, or desirability of the proposed subleasing arrangement. The participants did not discuss the racking of promotional literature separately from their consideration of the proposed subleasing arrangement between the CVB and the Chamber. To abstract any such discussions from the larger context would ignore the participants' purposes in raising the issue of the display of promotional materials. Thus, the closed meetings, in full, were held in order to consider a subject within the plain meaning of one of the Act's exemptions.

In contending otherwise, plaintiffs concede that, in great measure, the closed discussions were within section 2(c)(5) of the Act. However, in contending that not all of what was discussed at the meetings was protected from disclosure, plaintiffs draw a distinction between the "material terms of the lease, such as the location of the real estate, its boundaries, its price and the length of the lease term," which they admit were privileged, and "peripheral matters such as how the lessee is going to utilize the space rented," which they contend were not exempt. We disagree.

Plaintiffs' proposed construction of section 2(c)(5) suffers from several flaws. The primary one is that it finds no support in the statutory language. Section 2(c)(5) allows public bodies to conduct "closed meetings to consider *** [t]he purchase or lease of real property for the use of the

public body." 5 ILCS 120/2(c)(5) (West 2004). Nothing in this wording limits the exemption to the "material terms of [a] lease" or draws any distinction between "material" matters and "peripheral" ones. A closed meeting is permissible if it is held to consider the type of proposed subleasing arrangement at issue here. Insofar as the consideration of the proposed sublease was affected by allegedly "peripheral" matters such as the use of the space proposed to be sublet, those matters were within section 2(c)(5) of the Act. Plaintiffs urge that their distinction between material terms and peripheral terms would accord with the Act's policy in favor of openness in government and with its direction that its exemptions are to be strictly construed (see 5 ILCS 120/2(b) (West 2004)). However, as we have observed, the rule of strict construction does not entitle a court to rewrite a statute by ignoring its plain meaning or adding provisions that the legislature could have supplied but did not.

Furthermore, plaintiffs' proposed distinction between the "material" terms of the lease and the "peripheral" ones would not only rewrite the exemption at issue but would also be exceedingly difficult to apply. The distinction between the "material" terms of a proposed lease and the "peripheral" issues is bound to be either arbitrary or vague. The infirmity of plaintiffs' approach is apparent in the very application that they suggest here. According to plaintiffs, the location of the real estate, the rental amount, and the length of the lease term are "material," but "how the lessee is going to utilize the space rented" is merely "peripheral." Yet even a casual reading of the minutes of the two closed meetings demonstrates that how the CVB would be allowed to utilize the part of the Old Train Depot that it would occupy was anything but "peripheral" to the meeting's participants, including the agents of the County and the CVB. How the CVB (and the Chamber) would be able

to use the building was crucial to the County's strategy in deciding whether to proceed with the proposed subleasing arrangement at all.

Finally, adopting plaintiffs' construction of section 2(c)(5) could lead to potentially inconvenient or absurd results. Employing the distinction that plaintiffs urge us to adopt, a public body need not reveal where, when, or for how long it might lease real estate for its use, but would have to disclose the purpose of the lease and how it would use the mystery space that it plans to occupy. Such a result would likely benefit neither the public body nor the public; the former would have to disclose potentially sensitive matters that legitimately might be kept private, while the latter would receive information that might be incomprehensible and of no use out of its context. Even could we revise the Act under the guise of construing it, we would avoid a construction likely to produce absurdity, injustice, or inconvenience. See Kinn v. Prairie Farms/Muller Pinehurst, 368 Ill. App. 3d 728, 731 (2006).

We disagree with plaintiffs that applying section 2(c)(5) of the Act as it is written enables public bodies to engage in "secretive and wide-roaming discussions *** under the pretense that they relate to the acquisition of property interests." Courts remain free to do as the trial court did here-- examine the records of closed meetings to discern whether they were, in whole or in part, dedicated to the consideration of subjects within one or more of the Act's exemptions. We do not suggest that a public body may shelter deliberations that must be public merely by depositing them among discussions of exempt matters. That is not what happened here.

Because we hold that the closed sessions were wholly exempt under section 2(c)(5) of the Act, we conclude that defendants are entitled to summary judgment on that basis. Therefore, we need not consider whether any part of the closed sessions may also have been exempt under section

2(c)(6) of the Act (5 ILCS 120/2(c)(6) (West 2004)).  We reverse the trial court's judgment, and, exercising our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we enter summary judgment for defendants.

The judgment of the circuit court of Jo Daviess County is reversed.

Reversed.

BYRNE and GILLERAN JOHNSON, JJ., concur.